Chief Justice Robertson
delivered the Opinion of the Court.
Rosanna Boggess, after cohabiting with her husband, Robert Boggess, from the year 1808 to that of 1833, and bearing nine children by him, abandoned him, on the alleged ground of barbarous and inhuman treatment endangering her life, and shortly afterwards sued him in chancery, for a divorce, or for alimony.
In his answer, he denied the chief and more material allegations of the bill, and prayed that, as his wife had abandoned him, and seemed determined never to live with him again, he might be divorced from her.
Upon the hearing, on the bill and answer, and an unusual number of depositions, the Circuit Court dismissed *308 both the original and the cross bill; and t’ne wife prose? cutes this writ of error.
has"power to ^ecree a divorce ior any cause not specified in' the Btatute. ■ Query—Wh ethov n Crnivt
Want of due respect and kindness on the part of- the husband eVra thVAuteui’ peranee some-v^r?aprofan™ and boisterous, grounds foreranting her a divorce duct is such, that able6 lVeEd0n" believe that her ed° 'S endanger_ •
The jurisdiction of this Court over the entire decree, respecting as well a divorce as alimony, we are not disposed to doubt-because its revisory power upon a iorit of error extending, as it generally does, to all final judgments, decrees, and judicial orders, a statute of 1816, which imposes,the only restriction in divorce cases, only interdicts a writ of error for calling in question a decree granting a divorce; and consequently, a person aggrieved by an erroneous decree refusing a divorce, may prosecute a writ of error.
But being, as we are, well satisfied that the fact, properly scrutinized qnd understood, will not authorize a decree jn faVor of either party, for a divorce a vinculo, ac- ,. , . . r ,. , , , . cording to the provisions ot the statute prescribing jurjsdiction in such cases, and not doubting that, even if a Court of Equity possess any inherent power to decree a divorce for a cause not embraced by the statute of this state, no such cause has been shown to exist in this case—we cannot hesitate to approve so much of the decree of the Circuit Court as overruled the plaintiff’s prayer for a divorce.
Although the defendant’s conversation and deportmenq were not always characterized by the delicacy or n nu .nr tenderness which would generally be expected ot a prudent and affectionate husband, and which the utmost attainable felicity of the conjugal state will ever require, ai?d though even also, during spme occasional paroxysms of passion, produced or aggravated by an unbecoming, but not very intoxicating, use of ardent spirits, he was sometimes vulgar, and profane, and boisterous: nevertheless, there is no pretence of rational ground for deduction that his conduct endangered his wife’s life, Indeed, the chief, if not the only, reason alleged for her declared apprehension of danger, is that he permitted to remain on his farm a female slave whom she suspected for an attempt to take her life by enchantment or poison. And, as to that matter of grievance, it is deemed altogether sufficient to observe, first—that we are bound to infer, from all the facts, that there never was any at *309 tempt or design to kill the plaintiff, by poison or otherwise; and, second—that the defendant, in order to gratify her morbid feelings and lull her imaginary fears, had endeavored to sell the slave, and had hired her out from home until a few days before the abandonment, and did, shortly afterwards, sell her.
Alimony maybe allowed where there is not sufficient cause for a divorce; but not where the wife has abandoned the husband—unless.withoutfault on her part, her safety required it.
Nor can we perceive that, the Circuit Court erred in refusing alimony; for though a wife not entitled to a dissolution of the conjugal relation, may be entitled to alimony, according either to our statute or the common law; yet a wife who has voluntarily abandoned her husband should not have a decree for a separate inainter nance, unless her abandonment of him was, without her fault, rendered necessary for her safety or happiness, and was consistent with social order and .public policy. And in this case, we cannot feel convinced that there could have been any such necessity or consistency. It seems to us, that it would be more conducive to their pnutual comfort and peace, the welfare of their children, and public decorum, for the plaintiff and defendant t<j live together, than to be separated by the authority or with the sanction of a court of justice.
Decree affirmed,