# CHARLESTON.

## STEWART *v.* STEWART *et al.*

Submitted June 4, 1885.—Decided November 28, 1885.

27 167
28 544
28 550
30 382
30 566

27 167
38 398

27 167
44 275
45 387
45 743
45 745

27 167
47 152

27 167
49 11
49 207

27 167
e 60 425
60 426

27 167
63 575

27 167
66 313

1. A bill in a suit in equity brought for the purpose of subjecting property to the lien of an attachment and also to have a confessed judgment-lien on the attached property declared fraudulent as to the plaintiff's lien, is not multifarious.   (p. 171.)

2. It is a question of constitutional obligation not of state-policy, whether our courts will enforce a judgment of another state-court of competent jurisdiction, having jurisdiction in the case. (p. 173.)

3. When a judgment or decree of the court of another state is sought to be enforced in a court in this State, the court in this State may enquire into the jurisdiction of the court, which rendered the judgment or decree, and if it appears that such court had no jurisdiction, the judgment or decree is void, but if it had jurisdiction, the judgment or decree is valid and binding in this State. (p. 174.)

4. In deciding upon the effect to be given to a judgment or decree so rendered in another state it must be regarded as well settled, that the record of the decree must have the same effect in this State as in the state where rendered.   (p. 174.)

5. The record of a decree of the court of common pleas of a county in another state in the absence of evidence to the contrary must be regarded as the record of a decree of a court of general jurisdiction.   (p. 174.)

6. If the court of another state, which rendered the decree, was a court of general jurisdiction, the presumption is, it had jurisdiction of the particular case, and, to render the decree void, this presumption must be overcome by proof.   (p. 174,)

7. A decree for alimony not in a divorce suit, rendered by an Ohio

court having jurisdiction will at the suit of the wife against the husband be enforced in this State. (p. 175.)

8. In a suit, where the defendant demurred to the bill, which demurrer was overruled, and he did not answer, but after sale of his property in the suit he filed written exceptions to the report of sale, which were overruled, and the sale confirmed, and he appeals, and only assigns errors in the decree overruling his demurrer and overruling his exceptions and confirming the sale, his appeal will be maintained, notwithstanding he does not ask the court below to reverse decrees rendered in his absence, as he complains of no errors in such decrees. (p. 175.)

9. Where sixty-six acres of land were sold by a commissioner in a suit for $1,961.00, and the defendant showed an offer of an advance-bid of $5.00 per acre, the bidder offering to comply with such terms as the court might impose, it was the duty of the court to accept the bid, and if such terms were complied with, to set aside the sale and order a re-sale of the property. (p. 176.)

10. Where the sheriff has returned the process served on the defendants, and the court has ordered the bill taken for confessed as to them, and final decree has been entered in the cause, one of such defendants will not be permitted to contradict the return of the sheriff to such summons and show, that the process was not served on him in this State but in another state. (p. 177.)

*J. R. Donehoo* for appellant.

*G. W. Caldwell* for appellee.

JOHNSON, PRESIDENT:

Cynthia Stewart in September, 1880, filed her bill in the circuit court of Hancock county against her husband, Samuel Stewart, and one Caroline Shepherd. The bill in substance alleges, that in September, 1878, she brought a civil action against her husband, Samuel Stewart, in the court of common pleas within and for the county of Columbiana in the state of Ohio (the same being a court of record) for the recovery of alimony and for such other and further relief as equity might require." It further alleges, that in said suit the court decreed her $2,500.00 as alimony payable in ten days, and if not paid in ten days an execution might issue. The Ohio record of the court of common pleas is filed as an exhibit with the bill. The bill alleges further that the defendant, Samuel Stewart, owns a tract of land, describing it, in Hancock county; that the defendant is living in adultery with

one Caroline Shepherd at his dwelling-house in Beaver county, Pennsylvania, adjoining the land in Hancock county; that after said suit for alimony had been commenced in Ohio, the said Samuel Stewart confessed in the office of the clerk of the circuit court of Hancock county a judgment in favor of said Caroline Shepherd for the sum of $1,400.00, which judgment was confessed with intent to delay, hinder and defraud creditors of said Stewart; that she has attached the said land in this suit to pay said claim; that both said Stewart and Caroline Shepherd are non-residents of West Virginia. The bill prays, that said Stewart and Caroline Shepherd be made defendants, and said judgment may be set aside as fraudulent, and a decree of sale of said land may be entered to pay her said debt against said Stewart and for general relief.

On November 9, 1881, the defendant, Samuel Stewart, appeared and demurred to the bill on the following grounds:

"First.—It is multifarious.

"Second.—It declares the fact that the plaintiff has not been divorced from the defendant and therefore can not maintain the suit.

"Third.—The bill improperly seeks to enforce an order of a foreign court, as a lien upon real estate within this State.

" Fourth.—The plaintiff can not attach the real estate of her husband.

" Fifth.—The order of the court of common pleas of Columbiana county Ohio could only have been enforced by attachment and sequestration, and is not such an order as could have been enforced against the property, and it does not therefore furnish a basis for suit in this court.

" Sixth.—As it does not appear that the plaintiff is a resident of this county, and does not appear that this defendant is a non-resident, this court has not jurisdiction of this cause.

" Seventh.—The plaintiff can not maintain this suit in her own name.

" Eighth.—The paper marked 'Exhibit A.' and filed as a part of the bill is not properly certified."

The cause came on to be heard on March 27, 1883, " on the bill and exhibits filed therewith, the former orders made and entered therein, the process of summons duly executed

as to both of said defendants, the order of attachment issued in said cause and duly docketed, the levy endorsed on said attachment by the sheriff of Hancock county, and the depositions filed in said cause taken on due notice to said defendants, and was argued by counsel. And the said defendants not having, either jointly or severally, answered said bill, although a rule to answer was awarded against them, the said bill is taken for confessed as to them and each of them. The decree proceeds to ascertain the indebtedness of said Samuel Stewart to the plaintiff to be $2,500.00 with interest, &c., and require him to pay the same to the plaintiff with the costs of the suit, sets aside said judgment confessed to Caroline Shepherd, so far as it appears to be a prior lien to that of the plaintiff on said land, and orders the attached property to be sold, unless Samuel Stewart should pay the debt of the plaintiff within thirty days," &c.

On the 25th day of June Caroline Shepherd presented her petition praying said court to re-hear the case as to her, and that she be allowed to make answer and defence thereto, which was ordered filed. The petition represents that Caroline Shepherd is a resident of Beaver county, Pennsylvania; that a decree has been rendered against her greatly affecting her rights, by which a valid judgment in her favor was postponed to the claim of the plaintiff; "that said decree was rendered against petitioner by default, she never having appeared or made defence; that your petitioner was not served with process in said suit in this State, having been served merely with a copy of said process at her residence in said Beaver county, Pennsylvania, which, as she was advised by her counsel, was not such service as was binding upon her, and that she had never had notice of said decree until in June present, 1883." She prayed that the cause as to her might be re-heard, and that she be allowed to make answer and defence thereto, &c. The petition was sworn to.

The commissioner appointed to make sale of the property made his report on June 25, 1883, that he had duly advertised, &c., and sold said attached property and G. D. Swearingen became the purchaser thereof at $1,961.93 and has complied with the terms of sale. On the 26th of June Samuel Stewart filed his exceptions in writing to the said

report on the ground that the property sold for an inadequate price, and that Caroline Shepherd would bid 16⅔ per cent in advance of the price at which it was sold, if it should be again offered for sale, and tendered her offer in writing. He filed his own affidavit, that said land sold for $30.00 per acre which, he says, was a grossly inadequate price; "that the said real estate is in affiant's judgment and belief worth at the least $40.00 per acre, and he believes it to be worth $50.00 per acre." The written offer of Caroline Shepherd is in these words:

"IN THE CIRCUIT COURT OF HANCOCK COUNTY,
" *To the Honorable Geo. E. Boyd, Judge of said Court:*

"The undersigned Caroline Shepherd, one of the defendants in the above entitled cause, hereby offers to your honorable court, that she will bid for the real estate sold by special commissioner Caldwell under decree made in this cause on June 25, 1883, the sum of $35.00 per acre, and that she will in all things fully comply with the terms of sale, and she hereby offers to give bond in such sum as the court may require, conditioned to comply with the offer here made.

"CAROLINE SHEPHERD.
"*By J. R. Donehoo, her Solicitor.*"

On June 27, 1883, the court entered an order denying the prayer of Caroline Shepherd's petition and on the same day overruled the exceptions to the report and confirmed the sale. From the decree overruling the demurrer to the bill and that confirming the sale the defendants appealed.

The first error assigned is, that the court overruled the demurrer to the bill for the reasons stated in said demurrer. The first ground of the demurrer is, that the bill is multifarious. If it is, it is because it seeks to sell the land attached and also to remove the lien of the confessed judgment. This did not make the bill multifarious. It is every day practice to institute chancery suits to enforce liens and in the same suit to remove fraudulent conveyances out of the way.

The next ground is, that as the bill declares the fact, that the plaintiff is the wife of the defendant and has not been divorced from him, she can not maintain this suit. The object of the suit is to gather the fruits of her decree for

alimony. which she had obtained in the court of common pleas of Columbiana county, Ohio. The counsel for the appellants in his brief says: "The case is a singular and anomalous one. The courts of West Virginia are asked to enforce a decree of a foreign court, which they would originally have no power to render, which is not only beyond the scope of their jurisdiction, but which by reason of the sacred nature. involved is opposed to the whole genius and policy of our law. Does the constitutional requirement of 'full faith and credit' require that West Virginia should ignore her own laws in order to give effect to a conflicting one in Ohio?" This suit in Ohio for alimony and not for divorce is not so anomalous as the counsel supposes. In *Jamison* v. *Jamison*, 4 Md. Ch'y. 289, it was decided, that where a separation was commenced and is continued by the act of the husband against the will of the wife, and he refuses or neglects to make proper provisions for her support, the court of chancery in Maryland has the power to and will decree her alimony, though there has been no divorce decreed, and though the case made by the bill and proof would not according to the rules of the ecclesiastical courts of England entitle her to a divorce *a mensa et thoro*, the act of 1777 ch. 12 sec. 14, conferring jurisdiction upon the chancellor in cases for alimony, gives full and complete jurisdiction over the subject and does not restrict the court in making such allowance to the circumstances and causes, which would entitle the party to a divorce according to the ecclesiastical laws of England.

In *Glover* v. *Glover*, 16 Ala. 440, it was decided, that where a husband abandons his wife without just cause and casts her upon society destitute of the means of subsistence, a court of chancery as an original ground of equity will entertain a bill filed against him for alimony.

In *Galland* v. *Galland*, 38 Cal. 265, it was decided by a majority of the court, that the provision for alimony made in the statute concerning divorces was not intended to be a prohibition to the granting of alimony in other cases; that the power to decree alimony falls within the general powers of a court of equity and exists independent of statutory authority, and in the exercise of its original and inherent powers a court of equity will in a proper case decree alimony to

the wife in an action, which has no reference to a divorce or separation. For instances, where this power has been exercised either as claimed under the inherent power of chancery courts or by authority of statutes I refer to the following cases : *Jelineau, by next friend* v. *Jelineau*, 2 Des. 45 ; *Prather, by next friend* v. *Prather*, 4 Des. 33 ; *Helms* v. *Franciscus*, 2 Bland 544 ; *Galwith* v. *Galwith*, 4 Har. & McH. 477 ; *Turrell* v. *Turrell*. 2 Johns. Ch'y 391 ; *Lockridge* v. *Lockridge*, 3 Dana 28 ; *Boggess* v. *Boggess*, 4 Dana 308 ; *Butler* v. *Butler*, 4 Litt. 202 ; *Mayhugh* v. *Mayhugh*, 7 B. Mon. 424 ; *Wray* v. *Wray*, 3 Ala. 187 ; *Anshutz* v. *Anshutz*, 1 C. E. Green 162 ; *Bascom* v. *Bascom*, Wright 632 ; *Purcell* v. *Purcell*, 4 H. & M. 507 ; *Almond* v. *Almond*, 4 Rand. 662. See also the following English cases : *Oxenden, by next friend* v. *Oxenden*, 2 Vern. 493 ; *Head* v. *Head*, 3 Atk. 295 ; *Duncan* v. *Duncan*, 19 Ves. 394.

But it is not on the ground that such suits have been maintained in many States, that we would enforce a decree for such cause in our own courts, nor would we sustain it because it agreed with our policy, nor refuse to enforce it here because it is hostile to our policy. The reason why we would enforce a decree, rendered by a court of competent jurisdiction in another State, is the fact that the Constitution of the United States requires us to do so. For the wisest purposes the States when they formed and adopted the Constitution of the United States provided in sec. 1 of Article IV. : "Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State." If this clause had not been inserted in the Constitution and rigidly enforced by the judiciary in all the States, our relations as States to each other would have been anything but harmonious. Citizens by passing from one State to another could escape the effect of their contracts and obligations. It is not a question of State policy, whether we will or will not give effect to the judgments of courts of competent jurisdiction of other States. It is a question, whether we will in good faith live up to the constitutional obligations, which we have assumed. In *Gilchrist* v. *W. Va. O. & O. L. Co.*, 21 W. Va. 115, we decided, that where a judgment rendered in another State is sought to be enforced in a court in this State, our courts may enquire into the jurisdiction of the

court, which rendered it, and if it appear that the court, which rendered the judgment, had no jurisdiction, the judgment or decree is void; but if it had jurisdiction, it is valid and binding in this State; that in deciding what effect a judgment rendered in another State is to have in this, it must be regarded as well settled, that it must have the same effect here, as it had in the State, where it was rendered. It is not an open question, whether we will enforce the judgments and decrees of another State rendered by courts of competent jurisdiction having jurisdiction to render such judgment or decree. The general rule is, as we have stated it, if there are any exceptions, I have not been able to find them. I do not say there can be none. If the court of common pleas of Columbiana county had jurisdiction to pronounce the decree rendered there, and sought to be enforced here, we must give full faith and credit to it and enforce it here.

The record of a judgment or decree of a court of common pleas of a county in another State, in the absence of evidence to the contrary, is to be regarded as the evidence of a judgment of a court of general jurisdiction and is entitled to every presumption in favor of its validity and regularity. (*Pringle* v. *Woolworth*, 90 N. Y. 502.) If the court, which rendered the judgment or decree, was a court of general jurisdiction, the presumption is, it had jurisdiction of the particular case, and, to render the judgment or decree void, this presumption must be overcome by proof. (*Gilchrist* v. *Oil Co.*, 21 W. Va. 115.)

We think according to these rules, that it appears from this record, that the court of common pleas of Columbiana county, Ohio, was a court of general jurisdiction, and that it had jurisdiction of the particular case, in which the decree was rendered, and that such decree should be enforced in this State.

Another ground assigned was, that the record is not properly certified. It is in the usual form, no defects in the certificate are pointed out, and I see no objection to it.

Another ground was, that the bill improperly sought to enforce an order of a foreign court as a lien on real estate in this State. The answer to this is, that no such purpose appears in the bill. Still another ground is that such a decree

could only be enforced by attachment of the person and sequestration. This is not the law. Such a decree may be enforced as any other personal decree. (*Barber* v. *Barber*, 21 How. 582.) It would be strange indeed if this were so; that a recreant husband could escape all his obligations by removing his property from the State.

It is also objected that the court had not jurisdiction, because it does not appear that the plaintiff is a resident of the county, and does not appear that the defendant is a non-resident. It is clearly alleged that the defendants are non-residents, and as this is not controverted, the court clearly had jurisdiction. (*O'Brien* v. *Stephenson*, 11 Gratt. 610.)

It is also insisted, that the plaintiff could not sue in her own name, and could not attach the real estate of her husband. That she can maintain the suit in her own name is shown in the cases, which I have cited to show that she could in many States recover alimony without suing for divorce. If she could sue in the Ohio court and recover the decree, I can see no reason why she may not sue in her own name in this State to enforce such decree. In some cases in this State, it is conceded, she can sue in her own name, and this is one of the cases; and, as we have before seen, she may enforce the decree by attaching the property of the husband.

The defendant, Samuel Stewart, did not answer the bill but demurred thereto, and he can not therefore by reason of said demurrer object to anything except the order overruling the demurrer. (*Steenrod* v. *R. R. Co.*, 25 W. Va. 133.) The bill was taken for confessed as to him, but he did file written exceptions to the report of sale, which were overruled, and the sale confirmed. These errors are all he complains of. He assigns no error in the decree ordering the sale but only in the decree overruling his demurrer, and that overruling his exceptions to the report of sale. These errors he may have reviewed without making a motion under ch. 124 of the Code to have errors in the decree ordering the sale corrected, as these are the only errors, of which he complains in his petition. But as he did not answer the bill, if in his petition he had complained of errors in the decree ordering the sale, we would not consider any errors complained of, until he had made his motion in the court below,

to have the errors made in the decree rendered in his absence corrected, as we would not permit two appeals, when all the errors complained of could, after he had made his motion in the court below and failed to obtain relief there, be corrected on one appeal. Now as he does not complain of any errors in the decree rendered in his absence, we will consider those claimed to have been committed in his presence.

We have already reached the conclusion, that his demurrer was properly overruled. Did the court err, in overruling his exceptions to the report of sale? His only ground was inadequacy of price. This is founded first on his own unsupported affidavit that "the said real estate is in affiant's judgment and belief worth at least $40.00 per acre, and he believes it to be worth $50.00 per acre. While this Court has held in *Beaty* v. *Veon,* 18 W. Va. 291, that the court may set aside a sale of lands made by a special commissioner under its decree of sale upon any evidence or facts before it, which clearly show that the land was sold at a greatly inadequate price; and further whether the court will confirm a sale by a commissioner made under its decree must in a great measure depend upon the circumstances in each case, yet this Court has never set aside a sale for such a poor reason as set forth in the defendant Stewart's affidavit. It is said it was not contradicted. It was not worthy of consideration. If he could get no stronger evidence than that to show that his land sold for a grossly inadequate price, it was not worth while for the plaintiff to procure counter-affidavits at all. The affidavit is wholly insufficient to justify. setting aside the sale.

Should the court have set aside the sale because of the advance bid? This Court in *Kable* v. *Mitchell,* 9 W. Va. 492 decided, that the offering to the court of a large amount in advance of the price bid, to be secured either by the advance offered being paid into court or by bond with good security, as was done in that case, is generally the very best evidence of the great inadequacy of price bid at the sale, and the offer in that case of $11.52½ per acre in advance of the bid was regarded as sufficiently large to justify the court in setting aside the sale made by the commissioner, the tract of land containing about 101 acres. It does not here appear why the court refused to receive the upset bid. The land sold

was about sixty-six acres, and the advance bid would amount to about $330.00 or over sixteen per cent on the former bid.  We think this was sufficient to require the court on its terms being complied with to set aside the sale ; and the court erred to the prejudice of the defendant, Samuel Stuart, in not receiving the bid, and if its terms were complied with, in not setting aside the sale and ordering a re-sale.  There is no evidence in the record, that the offer of the advance bid was not made in good faith.  The court must have rejected it, on the ground that the bid was not sufficient. For this error the decree confirming the sale must be set aside, and the cause remanded with instruction to accept the advance bid of five dollars per acre, if the said Caroline Shepherd will comply with such reasonable terms as may be imposed by the court, and in case she does, *to put the purchaser in statu quo* and order a re-sale of the property, and if she declines to comply with such terms, to confirm said sale.

Did the court err in rejecting Caroline Shepherd's petition for a re-hearing ?   Sec. 12 of ch. 117 of the Acts of 1882 amending and re-enacting ch. 124 of the Code is as follows :

"13. When such order (of publication) shall have been so posted and published, if the defendants against whom it is entered, or the unknown parties, shall not appear at the next term of the court, after such publication is completed, the case may be tried or heard as to them.   Personal service of a summons, *scire facias* or notice may be made on a non-resident defendant out of this State, which service shall have the same effect, and no other, as an order of publication duly posted and published against him.  In such case the return must be made under oath, and must show the time and place of such service, and that the defendant so served is a non-resident of this State.   Upon any trial or hearing under this section such judgment decree or order shall be entered as may appear just."

Sec. 14 provides that "Any unknown parties or other defendant who was not served with process in this State and did not appear in the case before the date of such judgment, decree or order, or the representative of such, may within five years from that date, if he be not served with a copy of such judgment, decree or order more than one year before

the end of said five years, and if he was so served, then within one year from the time of such service, file his petition to have the proceedings re-heard in the manner and form provided by sec. 25 of ch. 106 of this Code and not otherwise and all the provisions of that section are hereby made applicable to proceedings under this section." ·

Section 25 of ch. 406, as amended and re-enacted by ch. 158 of the Acts of 1882, is as follows :

"If a defendant against whom on publication, judgment or decree has been or shall hereafter be rendered in an action or suit in which an attachment has been or may be sued out and levied as provided in this chapter or his personal representives shall return to or appear openly in this State, he may within one year after a copy of such judgment or decree has been or shall be served upon him, at the instance of the plaintiff, or within five years from the date of such judgment or decree, if he be not so served, petition to have the proceedings re-heard. On giving security for the costs which have accrued, and shall thereafter accrue, such defendant shall be admitted to make defence against such judgment or decree as if he had appeared in the case before the same was rendered, except that the title of any *bona fide* purchaser of any property real or personal, sold under such attachment, shall not be brought in question or impeached. But this section shall not apply to any case in which the petitioner or his decendant was served with a copy of the attachment, or with process in the suit wherein it issued more than sixty days before the date of the judgment or decree, or to a case in which he appeared and made defence."

Now this petitioner says, that by the decree entered in the cause on March 27, 1883 her judgment, (exhibited with the bill as confessed for $1,400.00), was declared void as against the plaintiff's attachment-lien. "That your petitioner was not served with process in said suit in this State, having been served merely with a copy of said process at her residence in said Beaver county, Pennsylvania, which as she was advised by her counsel, was not such service as was binding upon her, and that she never had notice of said decree until in June present, 1883. Your petitioner therefore prays your honor to order and decree that the said suit, so far as her

rights and interests are concerned be re-heard; that she be allowed to make answer and defence thereto," &c.

It seems hard, if the petitioner states the truth, that she can have no relief in this suit. But to give relief would be to contradict not only the return of the sheriff on the process issued in the cause, but also to contradict the judicial ascertainment that the defendant had been served with process, and that the bill was taken for confessed as to her. The statute did not contemplate a case like this. It speaks of re-hearing, where the suit has been heard upon an order of publication, or when the summons has been served on the party outside of the State, and the statute positively requires that "in such case the return must be made under oath and must show the time and place of such service, and that the defendant so served is a non-resident of this State." It would be dangerous to permit the record to be contradicted in such a way. If the return had been made as required by the statute, no more difficulty would be apparent, than if the cause was heard on an order of publication. But as it is, the defendant asks to be permitted to contradict the return of the sheriff upon the summons issued in the cause, and this, after the decrees are all entered upon the bill taken for confessed as to such defendant. It has been repeatedly held, that a defendant will not even in the same return or suit be permitted to contradict the return of the sheriff upon the summons issued in the cause. (*Slayton* v. *Chester*, 4 Mass. 478; *Taylor* v. *Lewis*, 2 J. J. Marsh. 400; *Smith* v. *Hornbeck*, 3 Marsh. 392; *Treble* v. *Frame*, 3 Mon. 51; *Stinson* v. *Snow*, 10 Me. 263; *Bowles* v. *Bowen*, 45 N. H. 124; *Angell* v. *Bowler*, 3 R. I. 77; *State* v. *Clerk of Bergen*, Dutch. 209; *Tulis* v. *Browley*, 3 Minn. 277; *Egery & Henckley* v. *Buchanan*, 5 Cal. 53; *Delingis, Adm'r* v. *Higgins*, 26 Mo. 180; *Stewart* v. *Stringer*, 41 Mo. 400; *Tillman* v. *Davis*, 28 Ga. 495.)

In *Bowyer* v. *Knapp*, 15 W. Va. 291, it was decided, that the return of a sheriff upon a notice to take depositions could be contradicted. In *Smith* v. *Hornbeck*, *supra*, the court said: "But as it appears from the sheriff's return that he delivered the possession to the plaintiff in virtue of the execution, parol evidence to show that possession was otherwise gained is inadmissable. For so high is the virtue of the

sheriff's return regarded, that generally no averment can be admitted against it. 6 Com. Dig. tit. Return, G. To this general rule there are indeed exceptions, as in an action upon the case against the sheriff for a false return, and some others of a like nature in which the truth of the return is put directly in issue, in a proceeding instituted for the purpose of avoiding the consequences of a false return, or of being indemnified against such consequences; but we are aware of no case in which, like the present where the question incidentally arises in a proceeding in the same case in which the return is made, it has been allowed to impeach its verity by evidence *dehors* the record." · In *Slayton* v. *Chester*, 4 Mass., *supra*, Parsons, chief justice, said : "It is very clear that where a writ appears by the return endorsed by the officer to have been legally served, that the defendant can not plead in abatement of the writ by alleging matter repugnant to the return ; if the return be false, his remedy is by an action for a false return against the officer."

In *Tillman* v. *Davis*, 28 Ga. *supra*, Lumpkin, judge, in delivering the opinion of the court said : "But I will not multiply citations upon this point. · I have investigated carefully in Brooke's and Viner's Abridgements, and traced the question to its fountain-head, and find it well settled, that by the common law no averment will lie against the sheriff's return, and one reason assigned amongst others is, that he is a sworn officer to whom the law gives credit. Jenk. 143, Pl., 98. * * With a solitary exception ( *Watson* v. *Watson*, 6 Conn. 334,) there is an unbroken array of American cases in favor of the well established English rule, that as between the parties to the process or their privies, the return of the sheriff is usually conclusive and not liable to collateral impeachment except for fraud or collusion ; a rule so necessary to secure the rights of the parties, and to give validity and effect to the acts of ministerial officers, leaving the persons injured to their redress by an action for false return ; and that this rule concluding the parties, applies to *mesne* process by which the parties are brought into court."

In *Watson* v. *Watson*, 6 Conn. 334 it was held, that the return of an officer whether on *mesne* or final process is *prima facie* evidence only, and liable to be disproved. Hosmer, C.

J., said : "It is a general rule of the English common law that a sheriff's return of an execution, except in relation to himself when sued, is absolutely conclusive. 19 Vin. Abr. 196, 199 Com. Dig. tit. Return, G. The reason assigned for not admitting an averment against the return of a sheriff is, that he is a sworn officer to whom the law gives credit. 19 Vin. Abr. 196, 201. The rule of the common law relative to the return of a sheriff on *mesne* process is the same ; and it necessarily must be as it falls within the same reason. * * To every practicing lawyer it is familiar, that the return of a sheriff on *mesne* process is held by the courts in this State to be *prima facie* evidence only. This, so far as my knowledge extends, has been the *ancient* and invariable doctrine of our courts and conclusively settles the law of Connecticut on this subject. For this departure from the *English* common law I am unable to assign the precise reason. I presume it must have been believed that the *prima facie* evidence only allowed to a return is a sufficient security to the rights of the people and necessary to prevent the perpetration of irreparable wrong."

The same position has been taken in New York, Indiana, Kansas and Wisconsin. (*Ferguson* v. *Crawford*, 70 N. Y. 253 ; *Butler* v. *State*, 20 Ind. 169 ; *Martin* v. *Gray*, 19 Kan. 458 ; *Pollard* v. *Wigman*, 13 Wis. 569.)

We see no reason for departing from the rule of the common law. If it is thought wise to permit the return of a sheriff on *mesne* or final process in any case, where the suit is not against him and his sureties for a false return, to be contradicted, the legislature should furnish the remedy. We think the rule of the common law was founded in wisdom. Others besides the defendant to the suit are interested, that the return of the sheriff should be regarded as absolutely true. Rights of property would suffer under any other rule, and there is sufficient protection against false returns of sheriffs in the right of action directly against him and his sureties. If this rule is rigidly adhered to, sheriffs will be much more careful, and the rights of the citizens much better preserved, than if his returns either in *mesne* or final process could be contradicted. The only benefit, that could be given to the petitioner, would come through permitting her

to contradict the sheriff's return, that she was served with process in the suit. He had no authority to serve the process as such officer outside of the State. He was not asked to correct his return by showing that the process was served out of the State. If he had done so, such correction would entirely have destroyed his return. As we said in *Bowyer* v. *Knapp*, 15 W. Va. 291, we do not mean to decide, whether under our statute the return of the sheriff on process may not be contradicted by plea in abatement filed in the suit at the proper time. The court was justified in decreeing that the bill should be taken for confessed upon the return of the sheriff. The petition was properly dismissed.

For the errors pointed out above the decree of June 27, 1882, is reversed with costs to the defendant, Samuel Stewart, and the cause remanded with instructions to proceed as herein indicated; and the other decrees appealed from are affirmed.

REVERSED IN PART.   REMANDED.