# CHARLESTON.

## STEWART *v.* NORTHERN ASSURANCE COMPANY.

(BRANNON, PRESIDENT, *dissenting.*)

Submitted June 4, 1898—Decided Dec. 17, 1898.

1. FOREIGN CONTRACTS—*Foreign Judgments—Appearance.*
    While the judgment of a competent court of any state that has jurisdiction over the person or subject matter is conclusive upon the merits of the controversy in every state, a court of another state has not the power, without service of process or voluntary appearance, to render a judgment on a contract that is absolutely void, under the statutes of the state where it is made. (p. 741)

2. FOREIGN CONTRACTS—*Foreign Attachment—Garnishment—Payment by Garnishee.*

　　If such a void contract is sued on by a foreign attachment in a foreign jurisdiction, the garnishee must make defense to the action, or notify, if practicable, his absent creditor of the pendency of the attachment proceedings, that such creditor may make such defense; otherwise, a judgment rendered by default will not protect the garnishee when sued by his creditor.   (p. 739)

　Error to Circuit Court, Hancock County.

　Action by Mary A. Stewart against the Northern Assurnce Company.   From a judgment in favor of plaintiff, defendant brings error.

*Affirmed.*

ERSKINE & ALLISON, for plaintiff in error.

HUFF & DONEHOO, for defendant in error.

McWHORTER, JUDGE :

　Mary A. Stewart, a married woman, was the owner of an hotel and furniture in New Cumberland, Hancock County, which was insured by the Northern Assurance Company, of London, England, which had its central or principal office in the United States, at Cincinnati, Ohio.   A loss occurred by fire, which was duly adjusted at one thousand seven hundred dollars; and, before the money was paid to the assured, Porter & Co., a corporation doing business at New Cumberland, brought an action before Louis Hauser, a justice of the peace, at Cincinnati, Ohio, on a store account against Mary A. Stewart, and sued out an attachment against the property of said Stewart, and cited the said assurance company to answer as garnishee, as the debtor of said Stewart.   In obedience to the summons duly served on it, the company appeared and answered, admitting its indebtedness to Stewart, when the justice heard the case, rendered judgment against the defendant, and issued an order against the garnishee requiring it to pay two hundred and fifty-one dollars and seven cents, the amount of Porter & Co's judgment, which it did on the 16th of June, 1892.   On the 27th of July, 1892, Mary A. Stewart brought her action against said assurance company in the circuit court of Hancock County, upon her pol-

icy of insurance, to recover the said sum of one thousand seven hundred dollars. The defendant appeared, and filed a special plea in writing, setting up the payment made by it under the said proceedings in Cincinnati of two hundred and fifty-one dollars and seven cents, and paid into court the residue of the one thousand seven hundred dollars with its interest; to the filing of which special plea plaintiff, by counsel, objected, which objection was by the court overruled, and the plea allowed to be filed, and leave was granted to plaintiff to file a special replication thereto by the 1st of April, 1893. To the special plea of defendant, plaintiff tendered her special replication, in writing, averring that at the time the contract mentioned in said special plea, and upon which the alleged judgment of Porter & Co., was recovered, was made, plaintiff was, and still is, a married woman, under coverture, domiciled and resident in the State of West Virginia, and then and ever since and there living with and not separate from her husband, William Stewart, and the said contract was made in the State of West Virginia, while she was so under coverture, domiciled, resident, and living with her husband as aforesaid, and this she was ready to verify, wherefore she prayed judgment, etc., to the filing of which special replication the defendant objected, which objection the court overruled, and permitted the same to be filed, to which ruling of the court defendant excepted.

On the 15th day of May, 1897, the case being called, and neither party requiring a jury, by consent the matters arising on the issue were submitted to the court in lieu of a jury; and the court having considered the evidence adduced and the arguments of counsel, rendered judgment for the plaintiff for the said sum of two hundred and fifty-one dollars and seven cents, and costs of the action. The defendant moved to set aside the finding and judgment, and grant it a new trial, on the ground that the same is contrary to the law and evidence, which motion the court overruled, and the defendant excepted. The bill of exceptions shows that the proceedings before Justice Hauser were regular, and the transcript thereof properly attested, cerfied, and proved, and it was agreed by the parties that the transcript should not be copied into the record, and that, as proven, it established and proved every allegation of

fact contained in defendant's special plea as to the proceedings in said action and the judgment by Justic Hauser against defendant, as garnishee, and the payment by it, in obedience to the order of said justice, on June 1oth, 1892, of two hundred and fifty-one dollars and seven cents. It was also, agreed that it was proven that defendant, at the time it was proceeded against as garnishee, had complied with the laws of the state of Ohio with respect to foreign insurance companies doing business in that state, and was subject to be proceeded against in the courts of said state as provided by the laws thereof applicable to foreign insurance companies doing business therein, and which evidence was by the court not copied into the record. It was also agreed that the plaintiff proved by witnesses all the matters of fact alleged in her special replication. The facts and allegations both of the special plea of the defendant and plaintiff's special replication thereto were admitted by both parties to be proved at the trial, all of which is set forth in the bill of exceptions. Defendant applied for, and obtained, a writ of error, making the following assignments: First, because the circuit court should have rejected the special replication of the plaintiff to the defendant's special plea, or should have sustained the demurrer to said replication; second, because the court erred in giving effect to said replication, and in treating the facts therein set up as affecting the jurisdiction of Justice Hauser to render the judgment pleaded in the defendant's special plea; third, the court erred in overruling defendant's motion for a new trial.

Appellant's counsel, in their brief, say: "The fact that Mary A. Stewart was a married woman, residing and contracting in a state where the laws at the time held her personal contract void, would, if it had been pleaded in the Ohio court, have been a complete defense to the action of Porter & Co., because the courts everywhere, in the exercise of their undoubted jurisdiction, give force and effect to the *lex loci contractus.*" They further say: "There is no evidence that the garnishee knew that she was a married woman, and the law did not require it to be concerned with any fact not affecting the jurisdiction of the court," and cite Black, Judgm. s. 595, in support of their proposi-

tion. Their position is correct to the extent said section goes, but, by their proposition that the law does not require the garnishee to be concerned with any fact not affecting the jurisdiction of the court, they assert that the garnishee owes no duty to its own creditor in the premises, which is untenable. In *Pennoyer* v. *Neff*, 95 U. S. 714, 727, Justice Field in delivering the opinion of the Court, says: "Substituted service by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken when property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale," *Door* v. *Rohr*, 82 Va. 359, Syl. 4. It is presumed that, when property in the possession of an agent is seized on legal process, the fact is known to the agent; and in case of garnishment of funds in the hands of a debtor of the defendant who is a nonresident, and not served with process, it is clearly the duty of such garnishee, if practicable, to notify his creditor of the proceedings, that he may make such defense therein as his rights and interests may require." Appellant's special plea alleges that the process was served on it on May 2, 1892, requiring it to make answer on the 5th day of the same month, which answer it filed on said last mentioned day, when, "it appearing that the summons has not and cannot be duly served on the defendant in this county, this cause is continued to June 15, 1892, at nine o'ciock A. M., for publication of notice," which is the entry made by the justice, as alleged in the special plea; that notice was duly published, and, at the time mentioned, Porter & Co. appeared, and proved their claim, and judgment was rendered against the defendant, who failed to appear, and also an order was issued on the garnishee to pay the said judgment and costs, which order was delivered to the constable; and that in obedience thereto, on the 16th of June, 1892, the garnishee paid same. In its special plea, defendant wholly

failed to alleged that it had notified, or attempted in any way to notify, the plaintiff, its creditor, of such proceeding.   For want of such allegation, the plea was not sfficient in law, and the objection thereto should have been sustained.   In *Morgan* v. *Neville*, 74 Pa. St. 52 (Syl. point 3), it is held that "a garnishee in foreign attachment, to protect himself, must give notice to his own creditor;" and this is manifestly right, *Pierce* v. *Railway Co.*, 36 Wis. 283 (Syl. point 1); also 8 Am. & Eng. Enc. Law, 1254, and cases there cited ; *Martin* v. *Railway Co.*, 50 Hun. 347, (3 N. Y. Sup. 82).

It is admitted by appellant that if plaintiff had appeared and pleaded the statute of her state as it then existed, in the action before Justice Hauser, the claim of Porter & Co. must have been defeated;' and yet with the full knowledge of the proceedings against her, and that she had no notice thereof, and could not be served with process, it stood by, and meekly paid out her money, in obedience to the justice's order, without even attempting, so far as the record shows, to notify her of the jeopardy of her property in its hands, all of which "smacks" strongly of collusion. Appellant cites *Virginia Fire & Marine Ins. Co.* v. *New York Carousal Mfg. Co.* (Va.) 28 S. E. 888, in support of its special plea, the court there holding that "it is a settled ıule, founded upon obvious principles of natural justice, that a garnishee cannot be lawfully compelled to pay the same indebtedness twice.   Nothing can be more clearly just than that a person who has been compelled by a court of competent jurisdiction to pay a debt should not be compelled to pay it over again.   Consequently, where he is in such a situation that, if charged as garnishee, this would be the result, he will not be charged, unless his situation is due to his own fault or neglect."   In that case it is shown that the garnishee was guiltless of any fraud or collusion. It took all the necessary steps to prevent a recovery in a suit pending in a North Carolina court for the same debt, pleading the garnishment in the Virginia court, but to no avail.   The North Carolina court refused the plea, and rendered judgment, and issued execution, and collected the money.   When it pleaded the North Carolina judgment, execution, and payment in answer to the garnishment in

the Virginia court, that court rejected the plea, and rendered judgment, which was properly reversed by the supreme court.

Appellee insists that Justice Hauser was without jurisdiction in the case, because of the facts set up in her special replication, and that the judgment rendered by said justice is void, and not entitled to the "full faith and credit" provision contained in section 1, Art. IV., Const. U. S. The appellee cites the case of *Bowler* v. *Huston*, 30 Grat. 266, where it is claimed the question is thoroughly discussed; but it cannot be said to cover the question raised in the case at bar. That was an action to enforce a personal judgment rendered by a New York court against Bowler, wherein there had been neither service of process nor appearance in person or by attorney. So, there was nothing upon which to found a judgment, and the record was an absolute nullity, and no question was raised of a judgment *in rem*, or involving a garnishee or substituted service in the case; and yet, under the statutes of New York, the judgment was a valid personal judgment as far as Bowler's interest was concerned in the firm with which he was sued in N. Y. In *Cooper* v. *Reynolds*, 10 Wall. 308, in discussing the question of jurisdiction, Justice Miller says "By jurisdiction over the subject-matter is meant the nature of the cause of action and of the relief sought; and this is conferred by the sovereign authority which organizes the court, and is to be sought for in the general nature of its powers, or in authority specially conferred. * * * While the general rule in regard to jurisdiction *in rem* requires the actual seizure and possession of the *res* by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for and represent the dominion of the court over the thing, and in effect subject it to the control of the court. * * * So, the writ of garnishment or attachment or other form of service, on a party holding a fund which becomes the subject of litigation, brings that fund under the jurisdiction of the court, though the money may remain in the actual custody of one not an officer of the court." Under the statutes of the state of Ohio, Justice Hauser had general jurisdiction, within the limitations and restrictions con-

tained in such statutes, in all cases of the nature of this proceeding before him based on legal and valid contracts and transactions.

While a judgment of a competent court of any state that has jurisdiction over the person and subject-matter is conclusive upon the merits of the controversy in every state, I question the power of the court of another state, without service of process or voluntary appearance, to render a judgment on a contract that is absolutely void under the laws of the state where it is made, and upon which contract a judgment rendered by a court of such last-mentioned state is void, even upon process duly served. In *D'Arcy* v. *Ketchum*, 11 How. 165, it was held that "congress did not intend by the act of 1790 to declare that a judgment rendered in one state against the person of a citizen of another, who had not been served with process or voluntarily made defense, should have such faith and credit in every other state as it had in the courts of the state in which it was rendered." That case was based on the statute of New York which provided that when joint debtors were sued, and one was brought into court on process, if judgment should pass for plaintiff he should have judgment and execution, not only against the party brought into court, but also against other joint debtors named in the original process, in the same manner as if they had all been taken and brought into court by virtue of such process; but it should not be lawful to issue or execute any such execution against the body or against the sole property of any person not brought into court.

It could never have been contemplated by the framers of the Constitution of the United States to include among judgments entitled to "full faith and credit," under section 1, Art. IV., a judgment obtained upon a contract absolutely void under the laws of the state where it was made, and upon substituted process. It may be said, then: Where is the protection afforded the garnishee in such case? On the other hand, what protection has the defendant, the creditor of the garnishee, in such a proceeding? The garnishee has better facilities for protecting his interests than the defendant. He is served with process. He knows of the proceeding. He can readily advise the

defendant, his creditor, thereof, and make his defense sure, if any there be; while without such notification the defendant remains in profound ignorance of the proceeding until his property is taken from him, may be on a valid, just claim or demand, possibly by the connivance of the plaintiff and the garnishee, on a void or illegal claim. In *White* v. *Manufacturing Co.*, 29 W. Va. 385, (1 S. E. 572, Syl.), it is held that "a judgment rendered by a court of common-law against a married woman, either in her own name or in the name of a company under which she does business, upon a contract made during her coverture, is absolutely void; and an execution or suggestion sued out upon such judgment is invalid and ineffectual for any purpose, and such judgment may be assailed collaterally in proceedings upon a suggestion thereon." I fail to see any error in the judgment, and the same is affirmed.

NOTE BY McWHORTER, JUDGE:

Since the foregoing opinion was handed down, I find the case of *Railroad Co.* v. *Nash*, (Ala.) 23 South. 825, decided in June, 1898, the syllabus of which is as follows:

"(1) The courts of one state have no jurisdiction to attach and condemn a debt due to and payable to a nonresident where he resides, by service of process on his debtor as garnishee, in the absence of personal service on the creditor within the state of the forum, or his voluntary appearance.

"(2) The payment by the garnishee of a judgment rendered for a debt against a nonresident without personal service within the state of the forum, or voluntary appearance, constitutes no defense to a subsequent suit by the judgment debtor against the garnishee.

"(3) The constitutional provision that 'full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state, does not apply to a judgment against a nonresident debtor, in the absence of personal service upon him within the state of the forum, or a voluntary appearance.' "

BRANNON, PRESIDENT, (*dissenting*):

This case is important in principle, and, regarding the decision in it as plainly erroneous and contrary to the right of the defendant under the Constitution of the United States. I must dissent.

My position is: The justice in Ohio had jurisdiction and authority under the law of Ohio to render the judgment

against the garnishee. This is not denied. This judgment had the effect there to protect the defendant against a suit by Mrs. Stewart to make him pay the money again. Having this force in Ohio, it must have the same force in every state, under the United States Constitution, providing that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state," and the act of congress under it that judgments in a court of one state " shall have such faith and credit given them in every court within the United States as they have by law or usage in the courts of the state from which they are taken." We do not go behind the Ohio judgment to see on what contract in favor of the creditor it was rendered, whether good or bad, void or not, because the only question is : Had the court jurisdiction, and did it give judgment protecting the garnishee there? 1 Greenl. Ev. s. 548. "It is a question of constitutional obligation, not of state policy, whether our courts will enforce a judgment of another state court of competent jurisdiction, having jurisdiction in the case. When a judgment or decree of the court of another state is sought to be enforced in a court in this state, the court in this state may inquire into the jurisdiction of the court which rendered the judgment or decree; and, if it appears that such court had no jurisdiction, the judgment or decree is void, but, if it had jurisdiction, the judgment or decree is valid and binding in this state." *Stewart* v. *Stewart*, 27 W. Va. 167. " The first question to be determined in regard to a judgment of another state, after jurisdictional inquiries have been satisfactorially answered, is, what is its effect in the state whence it was taken? The effect which it has there is precisely the effect which must be accorded to it in every other state. It must not be given any greater effect than it had in the state wherein it was rendered. If the judgment appear on its face to be harsh and erroneous, it must be received and enforced, irrespective of its harshness. The pleas which might be made to it at home, and those only, can be made to it in any other part of the Union." 2 Freem. Judgm. s. 575. The law is that it is not the domicile of the owner of the debt garnished that tests the place of jurisdiction for garnishment, but the question

whether the court had control over the garnished debtor within its territory. *Mooney* v. *Manufacturing Co.*, 34 U. S. App. 582, (18 C. C. A. 421, and 72 Fed. 32); *Douglass* v. *Insurance Co.*, 138 N. Y. 209, (33 N. E. 938).

Mrs. Stewart could sue the company in Ohio, and therefore it could be garnished there. "Foreign corporations are subject to the process of garnishment in all cases in which an original action may be commenced against them in the courts of this state to recover the debt in respect to which the garnishment process is served. * * * A foreign corporation doing business within the state may generally be made a garnishee in that state when, by the laws of the state, service of process may be properly made upon it therein; when according to the jurisdictional rule, the debt is payable within the state, or the corporation has within its control property belonging to the principal defendant." 2 Shinn, Attachm. s. 493. "When there is seizure of the defendant's property at the commencement of the action, or, in garnishment, what is equivalent to seizure at that time, namely, service of process upon the garnishee, accompanied in both cases by publication or other form of substituted service against a nonresident defendant, it is well settled that such process is due process of law in attachment suits, and that a judgment so rendered will divest the defendant of his title to such property, and will protect the garnishee from the danger of double payment." Reno. Nonres. s. 241. See *Molyneux* v. *Seymour*, 76 Am. Dec. 671. 2 Black. Judgm. s. 852, says : "The judgment of a foreign court of competent jurisdiction, in a proceeding in the nature of a garnishment, is binding and conclusive, and affords a complete protection to the garnishee, and the money paid under it cannot be recovered back by the original owner of the debt in any action in another country." Garnishment is a proceeding *in rem* binding everywhere (2 Shinn. Attachm. s. 486; 76 Am. Dec. 671; 1 Greenl. Ev. s. 543); at least so far as the property garnished and its owner are concerned. "The liability of property belonging to nonresidents to be attached and sold under leagal process is determined by the law of the state in which the property is actually situated, and from whose courts the process issues, and is not determined by the

law of the state in which the owner resides. Hence, in case of conflict between the laws of these two states, the law of the former governs." Reno, Nonres. s. 148. "Where, however, the garnishee is a resident of the state, the fact that the principal debtor is a nonresident will not affect the validity of the garnishment proceedings, because attachments are permitted against nonresident debtors. And the fact that the principal defendant is served by publication only has no effect upon the jurisdiction of the court, when the property or debt is within the power of the court; that is to say, where the property is within the jurisdiction of the court, or the debt is payable therein." 2 Shinn. Attachm. 861. But the opinion by Judge Mc-Whorter says that the contract of a married woman was void in West Virginia when this one was made. This is no matter. The question is the force of the Ohio judgment in Ohio. Rev. St. Ohio, s. 4996, 5319, authorize judgments on married women's contracts. Thus, the judgment is not void there. The position of Judge McWhorter is answered by many authorities. Our own Court, in *Black v Smith*, 13 W. Va. 780, held: When a court of law in the state of Maryland, having jurisdiction of the subject and person of the citizen, renders judgment in a cause therein pending, against such citizen for money, the validity of such judgment rendered by such court cannot be questioned in the courts of this state; nor will the courts of this state look into the transaction upon which the Maryland judgment is founded, in order to ascertain if that judgment ought not to have been rendered by the court." Johnson, President, in *Stewart* v. *Stewart*, 27 W. Va. 173 said: "But it is not on the ground that such suits have been maintained in many states that we would enforce a decree for such cause in our own courts, nor would we sustain it because it agreed with our policy, nor refuse to enforce it here because it is hostile to our policy. The reason why we would enforce a decree rendered by a court of competent jurisdiction in another state is the fact that the Constitution of the United States requires us to do so. For the wisest purposes, the states, when they formed and adopted the Constitution, provided, in section 1 of Art. IV, 'Full faith and credit shall be given in each state to the pub-

lic acts, records and judicial proceedings of every other state.' If this clause had not been inserted in the Constitution, and rigidly enforced by the judiciary in all the states, our relations as states to each other would have been anything but harmonious. Citizens, by passing from one state to another, could escape the effect of their contracts and obligations. It is not a question of state policy whether we will or will not give effect to the judgments of courts of competent jurisdiction of other states. It is a question whether we will in good faith live up to the constitutional obligations which we have assumed. In *Gilchrist* v. *Land Co.*, 21 W. Va. 115, we decided that, 'where a judgment rendered in another state is sought to be enforced in a court in this state, our courts may inquire into the jurisdiction of the court which rendered it, and, if it appear that the court which rendered the judgment had no jurisdiction, the judgment or decree is void, but, if it had jurisdiction, it is valid and binding in this state; that, in deciding what effect a judgment rendered in another state is to have in this, it must be regarded as well settled that it must have the same effect here as it had in the state where it was rendered. It is not an open question whether we will enforce the judgments and decrees of another state rendered by courts of competent jurisdiction having jurisdiction to render such judgment or decree. The general rule is as we have stated it. If there are any exceptions, I have not been able to find them. I do not say there can be none. If the court of common pleas of Columbia county had jurisdiction to pronounce the decree rendered there, and sought to be enforced here, we must give full faith and credit to it, and enforce it here.'" 2 Black. Judgm. s. 888, reads: "As to whether the personal disability of the defendant, at the time the judgment was rendered against him is a good defense to an action on such judgment in another state, the question depends upon the status of the judgment in the state of its rendition. Its validity must be tested by the laws of that state. If the coverture, infancy, or insanity is regarded, in the state where the judgment is rendered, as making the judgment absolutely void, that invalidity may undoubtedly be shown against it in any other jurisdiction. If, on the other hand, the ren-

dition of a judgment against such a person is regarded, in the state where it is given, as a mere irregularity or error in fact, having no greater effect than to make the judgment voidable on a propper direct proceeding for that purpose, then it will not be a good defense to an action on the judgment in another state. This rule is illustrated by a case ruled in Iowa. * * * The defendant answered that the judgment was void because rendered while he was a minor. * * * The chief justice said: 'If there was error in fact in permitting defendant to appear by attorney when a minor, it was an irregularity, and, as such, no more affected the validity of the judgment than if it had been an error in law. In either case the error, whether of law or of fact, does not render a judgment void; but a party may have his remedy in the state where the judgment was rendered, either in the same or an appellate tribunal. The defense cannot prevail here; for, until set aside, the judgment would have full force and effect in Ohio, and is entitled to the same here. The error does not go to the jurisdiction of the court.'" And the theory that the debt of the married woman is void will not sustain this decision. It is void, it is true, in West Virginia, in a court of law, and only there; for it is a valid debt in equity, binding her separate estate. The money garnished for it was separate estate, and bound for this debt, under our own law. A court of equity would, in this state, make it liable therefor. A justice in Ohio exercises law and equity jurisdiction, and his judgment binds that estate for this debt as a decree in equity would here. Do not think that I assert that the personal judgment against Mrs. Stewart in Ohio binds her. I mean that it binds her as to the debt, so as to protect the garnishee from second payment. I do not mean that it would further bind her.

I would much prefer that the Court should give, as the reason for its decision, the reason given in *Pierce* v. *Railway Co.*, 36 Wis. 288, and *Morgan* v. *Neville*, 74 Pa. St. 52, —that garnishee, to be protected, must notify his creditor, —than to place the decision on the untenable ground it does; though, with Thomp. Homest. & Ex. s. 864, I do not think notice necessary, as I have not found it suggested in other cases. Publication, as dictated by the law of Ohio,

is legal warning.   Nor did the company have to plead that
by the law of West Virginia the contract was void.   No
evidence shows that it knew she was a married woman.
In its widespread business, why require it to inquire ?   If
the state seize. the debt in its hands, shall it go further ?
Shall not Mrs. Stewart bow to the majesty of the public,
which makes that seizure valid?   Shall she assume to
question the power of the republic, though she suffer from
it, if she could suffer in paying a just debt for groceries,
making her life and the lives of those dear to her to sub-
sist?   *Id.* ss. 864, 866, shows this to be an unreasonable
requirement.   Nebraska and Wisconsin require that a garni-
shee shall plead that the debtor has a right to the garnished
debt as an exemption, but other authorities deny it.   *Moore*
v. *Railroad Co.*, 43 Iowa, 385; *Jones* v. *Tracy*, 75 Pa. St. 417;
*Conley* v. *Chilcote*, 25 Ohio St. 320; *Railroad Co.* v. *May*,
*Id.* 347.   I hold that this State, through this Court, should
give to the defendant the protection which the constitution
of the republic designed to give to all citizens alike.   No
mere sympathy should defeat this behest of the highest
municipal law.

NOTE BY DENT, JUDGE:

The assurance company doing business in the State of West Virgi-
nia must be presumed to know the laws thereof, and, having insured
the separate property of Mary A. Stewart, a married woman, must
be presumed, after the custom of insurance companies, to know that
she was a married woman, and what were all her rights and liabili-
ties with regard to said property under the laws of said state, and
therefore must be presumed to have known that her separate property
was not subject to her husband's control, nor liable for the payment
of his debts; and, being under his coverture, she was entitled to be
supported by him, and that any simple contract debt made in relation
to such support was void as to her, and binding on her husband alone,
and could not in any wise affect her separate property, as the laws
of West Virginia then stood.   Porter & Co., being residents of the
State of West Virginia, must also be presumed to be fully cognizant
of these matters, and that their alleged claim was no debt against
Mrs. Stewart. but binding on her husband alone.   Knowing this, they
seek a remote foreign tribunal, and upon a false and fraudulent affi-
davit, for they knew they had no debt which was enforceable against
the separate estate of Mrs. Stewart; they invoke its aid to secretly
seize and wrongfully appropriate her property, without her knowl-
edge.   She is given no notice of these proceedings, as such would be

fatal to them, but publication is made in a local paper, which she has no chance of seeing; and thus her separate property is fraudulently seized and appropriated without her knowledge, and her debtor, the garnishee, presumably with full knowledge of her rights and the fraudulent purpose of the plaintiffs, Porter & Co., and with its agencies in the State of West Virginia, makes no effort to defend the action, as it had the right to do, or to notify her thereof, that she might interpose her defense. Why did the garnishee thus remain silent? There can be but one answer, and that is that it was colluding with Porter & Co. to unlawfully apply Mrs. Stewart's separate estate on a debt for which it was not liable, and thus perpetrate a fraud upon her without her knowledge. The justice was not to blame in the matter, for he was imposed upon by the fraudulent conduct of the plaintiff, aided and abetted by the silence of the garnishee. The "constitution and majesty of the great republic" was never intended to be a cover for such fraudulent practices, and permit persons, by collusion, to wrongfully appropriate the property of another by deceit and stealth. This judgment against the garnishee, under the circumstances, should be regarded as though procured by itself. *Smith* v. *Dickson*, 58 Iowa, 444, (10 N. W. 850). The suppression of the truth oftentimes operates to perpetrate a fraud as completely as the utterance of a falsehood, and no one should be permitted to take advantage of a wrong in which he participates. The garnishee had the plaintiff's separate property, and it was in duty bound to defend it from the wrongful appropriation of others to debts to which it was exempt, or notify her of such wrongful attempt. Having failed to do either, it is no more than right that it should bear a loss incurred, to say the least, by its own indifference. Of two innocent parties, the one whose negligence occasioned the loss should bear the burden thereof. I concur in Judge McWhorter's opinion, for the foregoing reasons.

*Affirmed.*