# .CHARLESTON.

## CARTY *v.* CARTY.

Submitted June 11, 1910.   Decided December 19, 1911.

1. DIVORCE—*Grounds—Desertion.*

    A wife, deserted by the husband without cause at the marital domicil in another state, may acquire in good faith a separate domicil in this state and under our laws obtain a divorce on the ground of the desertion, though the husband is a non-resident and is only constructively served by publication.   (p. 147).

2. SAME—*Grounds.*

    Where the plaintiff in a suit for divorce has been actually and in good faith domiciled in this state for one year next preceding the bringing of the suit, it is no valid reason against granting the relief that the original marriage status was in another state, or that the cause for which the divorce is sought arose outside of the state, or that the defendant is a non-resident and only constructively notified.   (p. 150).

Appeal from Circuit Court, Brooke County.

Bill by Nettie Carty against Hugh Carty.   Decree for defendant, and complainant appeals.

*Reversed and Decree Entered.*

*R. L. Ramsey* and *J. A. Gist,* for appellant.

ROBINSON, JUDGE:

Plaintiff and defendant were married in this state.   They took up a domicil in Ohio.   After residing together there for a short time plaintiff returned to this state for a holiday visit with her mother.   While making this visit, she received a letter from defendant notifying her that he was forwarding her clothes and announcing his intention to desert her.   She returned to the domicil in Ohio, but the house was empty.   Defendant had sold the household effects and departed.   He had left no word as to his whereabouts.   Plaintiff returned to the home of her mother in this state, where she has since resided continuously, supporting herself as a mill worker.   In all that time, more than three years, plaintiff has never seen defendant.

Plaintiff, in the county of her residence in this state, sought a divorce from the bonds of matrimony, on the ground of defendant's desertion, proceeding against defendant, a nonresident, by order of publication. The circuit court denied the relief prayed. The decree expressly states that relief is denied because it appears from the evidence "that the ground of action arose outside of the state;" that jurisdiction was obtained only by constructive service; that defendant is a non-resident; and "that the marriage status was outside the state."

Plaintiff sufficiently alleges and proves that she has resided in this state for more than one year next preceding the time of bringing her suit; that defendant wilfully deserted her, without justifiable cause; and that the desertion has continued for more than three years. Ordinarily the case would warrant a decree of absolute divorce. Do the reasons assigned by the court below justify its refusal of a decree?

Plaintiff became a *bona fide* resident of this state after defendant deserted her. Through the necessity of her situation, she came here to live. It was natural that she should return to her old home when she found herself an abandoned wife. There is not a word of evidence from which it can be inferred that she merely came to this state to seek a divorce. The circumstances all negative any such intention on her part. She returned to this state, again to become one of its citizens, because the desertion by her husband enforced upon her the necessity of leaving strangers and seeking refuge in a native land among friends. Having in the best of faith become a resident of this state, plaintiff is entitled to the protection of the laws made for the good order and well being of its people.

To such a citizen as plaintiff has become, the statutes of the state vouchsafe right to the relief she asks. Any one who has in good faith resided in the state for more than a year is entitled to seek a divorce under its laws. Hear the statute: "The circuit court on the chancery side thereof shall have jurisdiction of suits for annulling or affirming marriages, or for divorces. No such suit shall be maintainable, unless the parties, or one of them, shall have resided in the State one year next preceding the time of bringing such suit. The suit shall be brought in the county in which the parties last cohabited, or (at the op-

tion of .the plaintiff) in the county in which the defendant re-
sides, if a resident of this State; but if not, then in the county
in which the plaintiff resides.  Such suit may be brought and
prosecuted by the wife in her own name, without a next friend,
and a decree may be rendered in the case upon the publication
of the summons and statement as provided in chapter one hun-
dred and twenty-four of this Code." Code 1906, ch. 64, sec.
7.  By another section, it is provided that a divorce from the
bonds of matrimony may be decreed to the party abandoned
"where either party willfully abandons or deserts the other for
three years." Code 1906, ch. 64, sec. 5. These statutes
have been enacted for the protection and welfare of our people.
Any one domiciled within the borders of the state for the time
required may avail himself of the efficacy of these provisions of
law.  For the welfare of the society of which he has become a
member, he may by these laws promote his status as such mem-
ber of society.  At least one of the parties to a divorce suit
must have resided within the state for the period of one year
next before the suit is brought.  But, by the very terms of
the statute, both parties need not reside in the state to justify
the pendency of the suit.  The statute plainly contemplates
that a resident plaintiff may sue a non-resident defendant. It
says a plaintiff may sue in the county of his own residence
when the defendant is a non-resident.  Provision is made for
constructive service by publication.

Plaintiff returned to this state bringing with her the status
of a married woman. When she acquired a new domicil here,
that status pertained to the domicil.  It is on that status that
the suit for divorce, under the laws of the domicil, acts. When
she sued for divorce, the marriage status was not outside the
state, as the lower court held.  As to plaintiff, that status was
with her in this jurisdiction, subject to the operation and effect
of our laws. "The right of any State to declare the status of
its own domiciled subject is absolute.  Without this right, no
ruler could be a sovereign in his own dominions.  And both
in reason and by the highest judicial authority in our country,
this doctrine applies as well to a husband or wife whose married
partner is permanently abiding in another State, as to both

parties when living together in the same State." 2 Bishop on Marriage, Divorce, and Separation, sec. 138.

But may the wife acquire a domicil distinct from that of the husband? Most assuredly so under the circumstances of this case. Would it not be preposterous to say that plaintiff must seek the unknown whereabouts of her neglectful husband and sue for divorce where he has established a domicil, or must sit down alone at the place of joint marital domicil—an empty house in a strange land—awaiting the return of the deserting husband for a long period fixed by law, and then sue for divorce there? When a wife is deserted without cause, she may go where reason and necessity dictate and there establish a domicil distinct from the offending husband's domicil. In reason, she cannot be required to follow the offender or to remain always where he left her. Indeed our statutes make plain the right of a wife to have a domicil in this state separate from that of her husband for the purpose of jurisdiction in obtaining divorce. "If, when a statute authorizes a wife to bring an ordinary suit against her husband, it by interpretation includes the needful collateral rights, among which is the right to have a separate domicil therefor, the same reason applies also, and with added force, to a suit which a statute permits her to bring against him for divorce." 2 Bishop, sec 116. "While the matrimonial domicil of the wife is usually that of the husband, yet if he is guilty of misconduct entitling her to a divorce, she may leave him and acquire a new residence in another state." 14 Cyc. 818. The principle enunciated in these texts is now generally recognized by text writers and adjudicated cases. Nelson on Divorce and Separation, sec. 46; *Barber* v *Barber,* 21 How. 582; *Cheever* v. *Wilson,* 9 Wall. 108. In the celebrated case of *Haddock* v. *Haddock,* 201 U. S. 562, the Supreme Court of the United States again clearly recognizes that a wife may have a separate domicil in a state other than that which is the domicil of her husband, and may there obtain a divorce if the case she presents justifies her maintenance of such separate domicil and her right to a severance of the marriage bond.

We have shown that our statutes provide for the granting of a divorce to one domiciled here, though the other party is a non-resident served only with constructive process by publica-

tion. It is not now pertinent to discuss the extra-territorial operation or validity of a divorce so granted. Plaintiff is entitled to a divorce so granted, and such divorce will avail her in this state. The fact that foreign jurisdictions may not credit the decree is no reason against granting it. In this state the decree will be valid, subject of course to the right of defendant to appear and re-open the case within the time fixed by law. "Where a court in one State, conformably to the laws of such State, or the State through its legislative department, has acted concerning the dissolution of the marriage tie, as to a citizen of that State, such action is binding in that State as to such citizen, and the validity of the judgment may not therein be questioned on the ground that the action of the State in dealing with its own citizen concerning the marriage relation was repugnant to the due process clause of the Constitution." Keezer on Marriage and Divorce, page 462; *Maynard* v. *Hill,* 125 U. S. 190; *Haddock* v. *Haddock, supra.*.

Nor is the fact that the desertion took place in another state a valid reason against decreeing a divorce to plaintiff. She has shown that she is a deserted wife. What matter where the desertion took place? Her status as a resident of this State is the same as it would have been had the desertion taken place here. We have seen that our laws may operate to affect that status, because plaintiff is a citizen of the State—a subject of our government. Besides, our divorce statutes make no distinction as to the place of the arising of the ground for which a divorce may be granted. The place of the marriage, the domicil at the time of the offense, and the place where the offense was committed, are all immaterial in a divorce suit under the existing laws of this state, so far as jurisdiction to maintain the suit is concerned. It is the domicil of one or both of the parties in this state, at the time of suit, that gives jurisdiction under our statutes. No other basis of jurisdiction is fixed. In this particular, our law is in accord with that generally recognized in the American states. Years ago, Justice Story announced: "The doctrine now firmly established in America upon the subject of divorce is, that the law of the place of the actual *bona fide* domicil of the parties gives jurisdiction to the proper courts to decree a divorce for any cause allowed by the local law, with-

out any reference to the law of the place of the original marriage, or the place where the offence for which the divorce is allowed was committed." Conflict of Laws, sec. 230 *a.* The following authorities are also in point: 2 Bishop, chapter 2, also sections 160, 164, 174; Nelson on Divorce and Separation, secs. 22, 23, 24, 25, 128; 14 Cyc. 589, 590, 591.

We must reverse the decree of the circuit court and enter here the decree that the circuit court should have entered—a decree annulling the bonds of matrimony between plaintiff and defendant.

*Reversed and Decree Entered.*