# CHARLESTON.

## CLARK *v.* CLARK.

Submitted June 8, 1910. Decided February 27, 1912.

1. INFANTS—*Guardian Ad Litem—Accounting and Settlement by Administrators.*

   In a suit by an administrator to settle his accounts, and charge the land of infant heirs with an over payment on debts of the decedent, the court allows their guardian to file a petition contesting the administrator's demands, and makes him a defendant with leave to make defence. There is no reversible error in this. It is equivalent to appointing the guardian as *guardian ad litem.* (p. 423).

2. EQUITY—*Commissioner—Report—Notice.*

   When a commissioner in chancery has completed a report, he must notify counsel of its completion, but the statute does not say any length of time of notice before filing the report after completion. (p. 431).

3. APPEAL AND ERROR—*Presentation of Questions in Lower Court—Report of Commissioner in Chancery.*

   When an attorney has been notified of the completion of a report, and makes exceptions to it after its return, it cannot be specified as error in the appellate court that the time of notice was too short before filing the report, when no application for further time to the court below was made. (p. 433).

4. PLEADNG—*Conclusiveness on Pleader.*

   A direct, specific admission of a fact in a pleading is binding and conclusive on the party making it. (p. 433).

Appeal from Circuit Court, Randolph County.

Bill in equity by George O. Clark, administrator, gaianst George O. Clark and others. From a decree for defendants, plaintiff appeals.

*Affirmed.*

*Claude W. Maxwell,* for appellant.

*H. Roy Waugh* and *Samuel T. Spears,* for appellees.

BRANNON, PRESIDENT:

George O. Clark was appointed administrator of the personal estate of his deceased wife, Alcinda Clark. She died leaving

personal and real estate. She left six children. Three of them
were of tender years, when she died in 1904. One, Orda, was
then five years old, and Alcinda and Carrie, twins, mere babies
a few days old. George O. Clark brought suit against his chil-
dren in the circuit court of Randolph county asking the court
to cause a settlement of his accounts as administrator, to be
made and alleging that he had paid many debts of his dead wife
in excess of her personal estate, leaving her estate in debt to
him in the sum of $2,272.16, and praying that her land be sold
therefor. H. B. Morgan was appointed guardian for three of
the infants, Orda, Alcinda and Carrie Clark, and he as guardian
presented a petition in Clark's suit, asking to be made a de-
fendant in order that he might contest the claim made by Clark
of indebtedness against his wife's estate, and that the petition
be treated as his answer. That petition denied such indebted-
ness. The court allowed the petition to be filed and ordered
that Morgan as guardian be made defendant and allowed to de-
fend the case. The court assigned a guardian *ad litem* for all
the infants, and he filed their formal answer, making no allega-
tions, but placing the rights of the infants under the care of the
court. The court referred the case to a commissioner in chan-
cery to report what personal estate Alcinda Clark owned at her
death, and what disposition thereof the administrator had made,
and how much, if any, personal estate was in his hands as ad-
ministrator available for payment of debts, and to settle the
accounts of George O. Clark as administrator, and to report and
specify what debts Alcinda Clark owed at the time of her death,
and what real estate she left. The contesting parties, George O.
Clark and the guardian Morgan, appeared before the commis-
sioner and a hearing was had, and the commissioner reported,
upon all the evidence before him, and his report found a balance
due from the administrator to the estate of $772.47. Clark filed
exceptions to this report. The court overruled the exceptions
and confirmed the report, and decreed that George O. Clark had
in his hands as administrator $772.47, and decreed that Clark
pay that sum to the estate, and pay to Morgan as guardian for
Orda A. Clark, Alcinda Clark and Carrie Clark their propor-
tionate share of $772.47, and gave Morgan leave to sue out exe-
cution therefor, and further decreed that George O. Clark pay

the remainder of the funds going to the other infants to the general receiver of the court. From this decree George O. Clark appealed.

The first point made against the decree is the action of the court in overruling Clark's demurrer to the petition of guardian Morgan. The claim is that a guardian can not bring suit to recover the personal estate of his ward from his administrator, citing *Burdett* v. *King,* 8 W. Va. 282, holding that a guardian cannot sue to recover the distributive share of his ward in the personal estate of an ancestor, but that the suit must be in the name of the infant by his next friend. The same principle is stated in *McMullen* v. *Blecker,* 64 W. Va. 88, holding that a guardian cannot maintain a suit for partition or intervene therein to secure royalty oil under an oil lease as the share therein of his ward. But in the later case of *Suter* v. *Suter,* 68 W. Va. 690, it was held that a guardian may maintain a suit for partition in behalf of his ward. In the last case it was distinguished from the *McMullen Case,* which was said to be under a contract. Under the latest case Morgan as guardian could, in my opinion, maintain a suit against Clark to have a settlement of his accounts as administrator and recover the share of his wards. But we do not have to go so far in this case. Morgan is not really bringing an original suit. Clark brought the suit to settle his accounts and charge the lands of the wards with debts, and their guardian simply asked the court to let him defend their interests, to produce evidence to resist the claim of indebtedness against the estate of his wards. The guardian *ad litem* made no defence, and ought not a court of equity listen to the suggestion of the guardian in defense of his wards? He is not an intruder, but has an interest, from his office, in the litigation.

Morgan was made a defendant. "Persons are not improper defendants who are so connected with the case as to be directly interested in obtaining or resisting the specific relief asked in the bill." *Zell Guano Co.* v. *Heatherly,* 38 W. Va. 410; Hogg's Eq., vol. 1, page 41. In Minor's Institutes, as cited to us, it is stated that "if an infant fully defended by his testamentary or regularly appointed guardian, the acquiescence of the court is equivalent to the appointment of such person as guardian ad

litem." In *Durrett* v. *Davis*, 24 Grat. 302, an answer for an infant was filed by his guardian, purporting to be by his guardian *ad litem;* but the opinions, statements and responses as those of the guardian were given. It was held to have the same effect as if filed by the guardian in proper person. The court thought it sufficient though filed by the guardian. In *Beverly* v. *Miller*, 6 Munford 99, it was held that in a suit against an infant, if it was defended by his regular guardian, and his answer was received on his behalf by the court, the infant was bound as if the guardian had been appointed a guardian *ad litem*. I suggest that it was the duty of the court to protect the interest of the infant, and it would commit no error in allowing the guardian to come to its aid by presenting matter of defense to enable the court to preserve the rights of children. By receiving this petition and acting on it the court in effect appointed the guardian as guardian *ad litem*. But this is immaterial. Suppose Morgan had not filed his petition. The commissioner was directed to ascertain and report, and no one can say that when Morgan produced a witness he could not be heard by the commissioner. He made no defense but this. What if there were two guardians *ad litem*? We must not yield to technicality, but look to substance and further the ends of justice.

One exception to the commissioner's report was "because the report was not made up within ten days before the 18th day of May 1909." Under this exception complaint is made that the report was made, not within ten days before its completion, but that it did not remain in the commissioner's office ten days for examination. The report was completed May 6. On the 19th the commissioner certifies that "the foregoing report was retained by me after completion, previous to filing the same, ten days for examination; that notice was given of completion of the same, as required by law." So it seems that it was retained the ten days in the commissioner's office after completion. No evidence shows it was not so retained.

An affidavit of the plaintiff's attorney was filed stating that no notice was given him of the completion of said report until May 18, 1909. We have thus the commissioner's certificate that notice was given. The statute does say that notice of completion of the report shall be given the attorneys; but I do not

think that it requires ten days notice before filing. If the party has notice before the hearing he knows of the report. But in answer to this point we say that the object of such notice is to let the attorney know of the completion of the report, and that in this case the attorney filed exceptions on May 20. Thus he had the benefit of notice and actually made exceptions. If the time was too short, all he had to do was to ask the court further time to make exceptions, when it was proposed to hear the case. It does not appear that such application was made. The case was not heard till May 26. No complaint of shortness of notice was made.

Complaint is made in this Court that when Clark was examined before the commissioner at the close of his deposition it is stated that the "further taking of these depositions is continued to a future date to be agreed upon." The affidavit of said attorney says that Clark had been ever since waiting to be examined, but that no notification of his further examination was given him, and that the report was wrongly filed without such notification. This should have been brought to the attention of the court, if Clark had any further evidence to be presented to the commissioner. No exception was endorsed on the report for that cause. No continuance asked, no affidavit from Clark that he had any further evidence. Notice that it is not stated or claimed that notice was to be given to Clark by the defendants. The depositions were continued until the time to be agreed on. If Clark had other evidence it was his duty to notify the other party, or at least to appear again before the commissioner. He had given his deposition on the second of April. He had plenty of time to go again before the commissioner. But in addition an affidavit of the attorney for the defence states that the defence did not ask for Clark to be held for further cross examination until he could consult the grandfather of the children, nor did any other person do so for Morgan, or make any request, and that there was no understanding that Clark was to be notified to appear for such examination, and that no agreement of any kind was made to this effect; that the taking of depositions at that time was held open only for the purpose to let Clark get witnesses to prove his claims against the estate, and that there was no understanding or agreement

to continue the depositions except to permit Clark to get in his evidence. Now, if in fact the case was continued to let the defence further cross examine Clark, the defence could waive that, and Clark could not complain of it; and if the postponement was to let Clark produce further evidence, it was his duty to do so without notice and not wait more than one month without doing so, though he knew the matter was pending before the commissioner open for his appearance. Furthermore, the commissioner, after due notice, took up the case on the 18th of January, 1908. The proceeding was before the commissioner, went on for four months before completion. And Clark actually appeared and gave a deposition more than a month before the completion of the report. How can he say that he was denied opportunity to present his evidence? What proof had he of his claim against the estate, does not appear.

Clark excepted to the commissioner's report because it charged him with having received as administrator personal estate amounting to $1,000 in the face of proof that he received only $300.00. Clark in his bill admits that there came to his hands to be administered property of the value of "about $1,000.00." In favor of the defendant the admissions of the bill are always taken to be true. 1 Barton's Chy. Prac. 421. "An admission made during the course of judicial proceedings, whether it be direct or by inference from the position taken, the relief sought, or defence set up, will stop the one who makes it from subsequently asserting any claim inconsistent therewith." 4 Am. & Eng. Dec. in Equity 304. This is a judicial admission, which, unlike others, is conclusive. 1 Ency. of Evidence 613. But who should know better than Clark? He had everything in his hands. If injustice is done him, who to blame? He has no legal appraisement made, furnished no inventory or account of the property. He now says that this admission is mistaken, but does not prove it. He furnished no specification to the commissioner. He files a list, of the property, specifying three cows, a note on Simmons and household goods, each a lump sum, total $300.00. This is no inventory. It is signed and sworn by three men; but it is not pretended that they were lawful appraisers acting under any authority. They do not so sign. And the oral evidence shows that this list is false, as that evidence proves other personal

property to about $700.00, and shows more of value not specified.

Error is assigned for the refusal of the commissioner to allow the payment of a note of $281.00 given by Clark and wife to Shanahan. Clark said "we owed that debt," meaning himself and wife. Shanahan, the creditor, swears that Clark was principal, his wife surety.

As to the rejection of the Sigafoose debt of $114.68. It was proven to be the debt of the husband.

It is proper to add as to this commissioner's report that there was full hearing on evidence, and great force is attributed to it in an appellate court, and it stands unless clearly wrong. We think this report one clearly right. *Stewart* v. *Stewart,* 40 W. Va. 65.

Complaint is made by counsel that Morgan was allowed to defend and that the money of his wards was decreed to be paid him as guardian. This is not assigned as error, and I need not discuss it. But it is said that Clark, the father, was, as natural guardian, the real guardian. A prompt answer is, that the code gives the guardian appointed by court or will the custody of his estate, the natural guardian, father or mother, custody of the person of the ward. Code 1906, ch. 82, sec. 7. We need not cite other law to show that a natural guardian has no right to hold the infant's property. *McDodrill* v. *Pardee L. Co.,* 40 W. Va. 564. The counsel says Morgan is no guardian, as Clark had the preference of appointment. The statute gives him no preference, and there is the record of Morgan's appointment by a county court. So it was proper to decree to Morgan his wards' money as guardian.

It is complained in brief of counsel, but not assigned as error, that the shares of the other infants was put into the hands of the receiver. Now, this case was one winding up and closing the estate. Had these three children had a guardian it would have been proper to decree their shares to him. Should it have been left in the hands of Clark as administrator? Not in view of the facts clearly shown in the record. He sought to sell his children's land for numerous fictitious debts rejected by the commissioner. He owed Shanahan $281.00, and induced his wife to make to Shanahan three notes, one for that debt, two other utterly fictitious, those two calling for $1,200. Not a cent's con-

sideration, as ·Clark admitted ·under oath to the extent of $1,213.00. He finally disclaimed any right under them before the commissioner in this case. A deed of trust given by him and his wife for $1,500 for those notes, to cover up his property, it seems, from creditors. Shanahan, though somehow a party to this transaction, relented, and refused to claim these two false notes, and gave them up to ·Clark with the injunction to destroy them. But later, in *ex parte* settlement not before us, Clark claimed those notes against the estate. I see no error in putting this money in the hands of the receiver, as the decree closed the estate, even if bad conduct and fictitious claims by Clark were not shown, as the court ought to exercise its discretion in selecting a mode of conserving the property of the infants. But surely it is not error when we see those bad features rendering Clark an unfit trustee.

. What right had he in a legal point of view, to retain the money? The court's disposition of the money can not hurt him.

I have said too much about a plain case; but counsel has demanded that we go over the points.

. Decree affirmed.

*Affirmed.*