# Richmond.

## Jesse Waller v. W. B. Eanes' Adm'r, Et Als.

### March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Whittle & Whittle,* for the appellant.

*John W. Carter,* for the appellees.

GREGORY, J., delivered the opinion of the court.

On the 21st day of September, 1928, the appellant filed his bill in this cause asking for an injunction restraining the sale of his land under a deed of trust. A temporary injunction was granted. A demurrer was filed to the bill and then the defendant, Eanes' administrator, filed an answer. The parties proceeded to take their evidence and when they had concluded the evidence, the cause, both upon the demurrer and upon the merits, was submitted to the court for decision and decree in vacation. Thereafter the trial judge rendered his decision in vacation holding that the bill was demurrable and dismissed it. By its decree the court held that "it appearing on the face of the plaintiff's bill that the deed of trust * * * was fraudulently executed by the said Jesse Waller with intent to avoid the payment of any fine that might be imposed upon him by reason of a prosecution pending against him for a violation of the prohibition law and to avoid the payment of certain taxes asserted to be due by him to the government of the United States, and the court being of opinion that he who comes into equity must come with clean hands and that a court of equity will not entertain the suit of him who discloses his own fraud * * * doth order and decree that the demurrer to the bill be and the same is hereby sustained * * *." The injunction was dissolved and the bill dismissed.

Error is assigned to the court's ruling on the demurrer, dissolving the injunction and dismissing the bill.

From the procedure followed in presenting the cause to the trial court, that is, filing the demurrer, filing the answer and submitting the cause on the demurrer, the answer and upon the evidence, we now have the entire cause before this court.

The appellant alleges in his bill that for many years prior to March 27, 1920, when he bought the land which is here involved, he had been a renter and had worked for W. B. Eanes, who was a large landowner, successful farmer, a former member of the General Assembly of Virginia, a former justice of the peace and at that time chairman of the board of supervisors of the county; that the appellant, an ignorant colored man, had the utmost confidence in the integrity and judgment of Eanes; that appellant looked upon Eanes as his master and that he always looked to him for advice and guidance in matters of business and religious or domestic affairs.

Appellant alleges that in 1920, upon the advice of Eanes, he bought and paid for the 108 acres of land here involved and has made his home there since that time.

It is alleged that in March or April of 1922, prohibition officers charged appellant with the possession of a still on his land and he was required to furnish bail for his appearance in court. Eanes appeared as surety for him. Later, but before trial, appellant received two letters from the Federal government advising him that a large tax would be assessed against him on the whiskey he had made on his land and he promptly carried the letters to Eanes, who told him he could and would attend to the matter. At the suggestion of Eanes the appellant met him at the courthouse and he told appellant to sign two deeds of trust, one securing Eanes $1,940.00, and the other securing John Wilson, another white neighbor, $840.00. Appellant alleges that he, at first, refused to sign the deeds because he did not owe Eanes or Wilson any money and so informed them, but Eanes told him he (Eanes) was handling the matter in a manner he deemed proper and that appellant and his wife must sign the deeds. After telling Eanes that he did not want to do anything wrong, and after Eanes had assured him that there was nothing wrong about the transaction, he did sign the deeds.

It is alleged that Eanes and Wilson agreed to release the liens of their deeds of trust after the matter with the government had been settled; that appellant was acquitted of the charge of owning the still and that Wilson promptly released the lien of his deed of trust.

It is further alleged that Eanes promised to release his lien but died suddenly before doing so; that he did not owe Eanes anything and that he did not make the note which the administrator now holds and is seeking to collect; that the administrator is advertising the appellant's land under the deed of trust for its satisfaction.

An injunction was sought, restraining the sale. The appellant prayed that the administrator be required to release the deed of trust.

The basis of the court's decision on the demurrer, is the equitable maxim that he who comes into equity must come with clean hands, and that since the allegations of the bill disclose Waller's own fraud, he was not entitled to any relief. If the bill shows that Waller and Eanes are equally guilty of fraud and are *in pari delicto* so far as the deed of trust is concerned, or that it would be against public policy to grant relief, then Waller is entitled to no relief and the ruling of the court in dismissing the bill would be correct. On the other hand, if the bill discloses that they are not equally at fault, though the transaction may have been fraudulent, and Waller was less guilty in degree of the fraud than Eanes, then the bill would not be demurrable because the parties were not *in pari delicto*. Still another consideration may be given to the transaction, and that is, if they were *in pari delicto,* whether public policy would be more likely to be offended by enforcing the deed of trust in favor of Eanes or his administrator than it would be to require its release to Waller. So if the bill discloses (a) that the parties are not *in pari delicto* or (b) if they are *in pari delicto,* public policy will be promoted

by granting Waller relief, then in either event the bill would not be demurrable.

From a careful consideration of the bill we are convinced that the parties were not *in pari delicto*.

In passing, it is worthy of note that Waller was acquitted of the prohibition offense; that the Federal government never imposed the Federal tax upon him and that the Federal statute under which such tax could have been imposed, if he had been found guilty, was declared unconstitutional by our Federal District Court of the United States in the case of *Coffey* v. *Noel*, 11 Fed. (2nd) p. 399. Inasmuch as this case was not carried to the higher court, it is now the settled law in this jurisdiction. So, in fact, it is clear that Waller's conduct has not been responsible for evading any law either Federal or State, nor has he actually defrauded any person.

From the bill, one is impressed with the fact that Eanes was trying to help Waller, his friend, an ignorant colored man, out of his supposed difficulties and that had Eanes lived he would have released the deed of trust as he had agreed to do. But inasmuch as the administrator stands in the shoes of Eanes and is now seeking to enforce the deed of trust, which is contrary to the understanding as disclosed in the bill, we necessarily must impute bad faith in the effort to profit by the transaction, if the allegations are true, and it relates back to the time the agreement was made.

It is universally held that no action at law can be had, or suit in equity maintained, upon an illegal contract. No suit can be maintained for its performance or to recover property conveyed by it. A court of equity will not, in the absence of controlling motives of public policy to the contrary, grant its aid by decreeing a recovery back of property conveyed or the cancellation of the conveyance.

But there is a well known limitation to this rule. Where the parties are not *in pari delicto*, that is, where one of the parties is less blameworthy than the other, the rule does not

apply. We find the limitation very clearly recognized and stated by Mr. Pomeroy in his *Equity Jurisprudence, Sixth Edition,* Vol. 1, section 403, and Vol. 2, section 942.

In section 403, we find this statement: "Limitations— Parties not *in pari delicto.*—Upon the general doctrine stated in the preceding paragraphs concerning the effect of fraud and illegality upon the remedial rights of parties seeking the aid of equity, there are certain limitations, founded mainly upon motives of policy, which require a brief mention. Wherever a case falls within the limitation, and not within the general rule, the court may give relief against the improper transaction, or may even enforce the obligation arising from the tainted agreement, at the suit of one of the parties thereto. The first of these limitations may be given in the following general formula, and all the others may be regarded as merely particular deductions or corollaries from it. Assuming that a contract is fraudulent, or against public policy, or illegal, still, where the parties to it are not *in pari delicto,* and where public policy is considered as advanced by allowing either, or at least the most excusable of the two, to sue for relief, relief may be given to him, either against the transaction by setting it aside and restoring him to his original position, or even, in some cases, by enforcing the contract, if executory * * *."

And again in section 942 is this statement: "Not *in pari delicto.*—Lastly, when the contract is illegal, so that both parties are to some extent involved in the illegality—in some degree affected with the unlawful taint—but are not *in pari delicto*—that is, both have not, with the same knowledge, willingness, and wrongful intent, engaged in the transaction, or the undertakings of each are not equally blameworthy—a court of equity may, in furtherance of justice and of a sound public policy, aid the one who is comparatively the more innocent, and may grant him full affirmative relief, by canceling an executory contract, by setting aside an executed contract, conveyance, or transfer, by recovering back money paid or

property delivered, as the circumstances of the case shall require, and sometimes even by sustaining a suit brought to enforce the contract itself, or if this be impossible, by permitting him to recover the amount justly due, by means of an appropriate action not directly based upon the contract. Such an inequality of condition exists so that relief may be given to the more innocent party, in two distinct classes of cases: 1. It exists where the contract is intrinsically illegal, and is of such a nature that the undertakings or stipulations of each, if considered by themselves alone, would show the parties equally in fault, but there are collateral and incidental circumstances attending the transaction, and affecting the relations of the two parties, which render one of them comparatively free from fault. Such circumstances are imposition, oppression, duress, threats, undue influence, taking advantage of necessities or of weakness, and the like, as a means of inducing the party to enter into the agreement, or of procuring him to execute and perform it after it has been voluntarily entered into.

"2. The condition also exists where, in the absence of any incidental and collateral circumstances, the contract is illegal, but is intrinsically unequal; is of such a nature that one party is necessarily innocent as compared with the other; the stipulations, undertakings, and position of one are essentially less illegal and blameworthy than those of the other."

In this case Eanes was chairman of the board of supervisors of his county, a life-long friend and neighbor of Waller, an ignorant negro. Waller signed the deed of trust at the solicitation and on the advice of Eanes, who told him that it was necessary for him to do so in order to save his home from the threatened tax; that it was for his protection; and that there was nothing wrong about it. Eanes had the confidence of Waller—had been his advisor and counsellor many times before and was the active party. From the friendly relations which had long existed and the confidence

Waller had in Eanes, he was led into making the agreement because of his ignorance and helplessness.

Under such circumstances it cannot be said that they were equally guilty and *in pari delicto*. We think the allegations of the bill show that this case comes within the limitation so well expressed by Mr. Pomeroy in his Equity Jurisprudence and for that reason the demurrer should have been overruled.

We may well inquire whether public policy would not be more shocked by permitting Eanes' administrator to reap the benefit of the deed of trust involved here by allowing him to foreclose it when it was inspired and made at the direction of Eanes, than to require it to be released to Waller, who as alleged was comparatively innocent and the victim of his misplaced confidence in Eanes. The result of refusing Waller relief on the grounds that he does not come with clean hands, would prove a cover and shelter for Eanes to take advantage of his superior intelligence in persuading Waller to sign the deed upon the representation alleged in the bill that "there was nothing wrong about it." It would seem that public policy would be more violated by refusing Waller relief than it would be by granting it to him.

Of course equity is not concerned with the fortunes of either party but it is concerned in granting relief in cases of this kind if public policy demands it, and it would seem that public policy would not condone a transaction where it was made at the solicitation and direction of the party of superior intellect, who stood in a confidential relation to the other, and permit him to retain the advantage of the contract he himself inspired to the detriment of the other who happens to be as ignorant and confiding as this negro was.

In Virginia it has been held that even if the parties are *in pari delicto,* equity will enforce an illegal contract or grant relief from it, whenever it appears that to do so would promote public policy.

In the case of *Clay* v. *Butler,* 132 Va. 464, 112 S. E. 697, 699, we find this clear statement of the principle:

"In *Starke* v. *Littlepage,* 4 Rand. (25 Va.) 368, Judge Green, in discussing the maxim *'in pari delicto,'* said: 'But this rule applies only in cases where the refusal of the courts to aid either party frustrates the object of the transaction and takes away the temptation to engage in contracts *contra bonos mores,* or violating the policy of the laws. If it be necessary, in order to discountenance such transactions, to enforce such a contract at law, or to relieve against it in equity, it will be done, though both the parties are *in pari delicto.'*

"The court will consider whether the good of the public and the policy of the law will be subserved and the making of such contracts be discouraged, by enforcing the contract in the case before it, or by refusing to do so, and will do the one or the other as will advance the interest of the public and the policy of the law."

And again in the case of *Cardwell* v. *Kelly,* 95 Va. page 570, 28 S. E. page 953, 954, 40 L. R. A. 240, this is said:

"In a case of the nature of that at bar, the court will be governed in some degree at least by its particular circumstances. It will consider whether the good of the public and the policy of the law will be subserved and the making of such contracts be discouraged by enforcing the contract in the case before it or by refusing to do so, and will do the one or the other as will advance the interest of the public and the policy of the law."

It very clearly appears in Virginia that the equitable maxim, that he who comes into equity must come with clean hands, is subservient to the public policy of the State and cannot be invoked in contravention thereof.

While this opinion and some of its expressions seemingly conflict with *Nunnally* v. *Stokes,* 116 Va. 472, 82 S. E. 79, and some of the expressions found there, we can only say that the difference in the facts shown justifies the difference

in the conclusions. While, as said in *Nunnally* v. *Stokes,* a party "cannot make his own fraudulent conduct a ground of defense or recovery," he may nevertheless show all of the facts and invoke well recognized equitable doctrine, if applicable, to prevent the greater wrong.

We, therefore, conclude that the public policy of the State will be promoted by granting the relief asked for in this case and that the demurrer to the bill for that reason should have been overruled.

On the merits of the case the evidence shows to our satisfaction that Waller did not owe Eanes the amount claimed and that the deed of trust was executed without consideration. We deem it unnecessary to detail the evidence or to discuss it at length. The outstanding facts are that the note held by the administrator was barred by the statute of limitations; it having been made April 9, 1921, maturing one year thereafter and the limitation of five years applicable thereto having expired April 9, 1927; that no interest on the debt was ever demanded by Eanes through all of these years; that it was never listed by him for taxation; that Wilson, who was the beneficiary in a similar deed of trust executed at the same time and under the same circumstances and for the same purpose, promptly released it; that the widow and children of Eanes, shortly after his death, applied to the clerk to release the deed of trust here involved but were instructed that Eanes' administrator would have to make the release and the uncontroverted testimony that Eanes during his lifetime had on various occasions promised to make the release. These facts considered along with the other evidence in the case convince the impartial mind that Waller did not owe Eanes the debt claimed and asserted in the administrator's answer.

But the appellee urges that certain evidence of Waller and of Wilson was objectionable because it tended to vary and contradict the terms of the deed of trust. Waller was asked if he ever owed Eanes $1,940.00, to which he replied "No."

Wilson was asked to explain how this transaction was brought about and he in substance answered that he and Eanes were talking and Eanes told him something would have to be done for Waller in order to save his home and they agreed to take the two deeds of trust for that purpose.

In the defense of this suit the appellee has taken two positions. 1st: That the deed of trust was conceived in fraud; that Waller and Eanes were equally guilty of the fraud and that Waller for that reason has no standing in a court of equity; and, 2nd, it is claimed that the deed was executed in good faith to secure a valid debt.

Without commenting upon the inconsistency of the appellee's position in this suit, when we consider the entire bill it is clear that the case made by it discloses the fraud of Eanes and that the deed of trust was executed without consideration. This is one of the positions taken by the appellee, and is sustained by the proof, and as the whole case is now before the court upon the entire record, we do not think that the evidence objected to violates the parol evidence rule.

It is elementary that where fraud and lack of consideration are clearly disclosed by the allegations of the bill, parol evidence is always admissible to show those things, but aside from this appellees are not permitted to make the defense that both parties were equally guilty of the fraud and then object to the evidence which would show the fraud.

The decree complained of is reversed and this court will now enter such decree as the trial court should have entered, that is a decree overruling the demurrer and perpetuating the injunction.

*Reversed.*