ELMER MILLER GARDNER

*v.*

MINNIE LILLY GARDNER

(No. 10900)

Submitted September 8, 1959.   Decided October 6, 1959.

*Paul J. Fourney,* for appellant.

*Haynes & Ford, Sheldon E. Haynes,* for appellee.

632

CALHOUN, JUDGE:

In this suit in chancery instituted in the Circuit Court of Greenbrier County, Elmer Miller Gardner prays for an annulment of his marriage to Minnie Lilly Gardner on March 20, 1954, on the ground that a divorce he obtained previously in Tennessee from Grace Showalter Gardner, his wife by a former marriage, is void.

By a final decree entered on August 15, 1956, the circuit court annulled the second marriage. This necessarily implied an adjudication that the Tennessee divorce was void. From the final decree, Minnie Lilly Gardner prosecutes this appeal. The parties will be referred to herein as "plaintiff" and "defendant", respectively, according to their designation in the lower court.

Elmer Miller Gardner and Grace Showalter Gardner were married in Virginia on January 27, 1918. They lived together as man and wife in that state until July, 1951, when he went to Ronceverte in Greenbrier County, West Virginia, in connection with his employment. There he became acquainted with the defendant. It is reasonably obvious from the testimony that they later contemplated marriage to each other, and discussed the possibility of his obtaining a divorce from Grace Showalter Gardner.

Thereupon, according to plaintiff's testimony, he consulted an attorney and received advice that it would not be possible for him to obtain a divorce in West Virginia, but he learned that another man "living in the Greenbrier Valley" had obtained a divorce in Tennessee "under these conditions". Accordingly, the plaintiff wrote two letters to and had a telephone conversation with B. C. Frassrand, an attorney, whose address was 407-08 Jackson Building, Chattanooga, 2, Tennessee. The two letters were typed by a daughter of the defendant. A letter was mailed by B. C. Frassrand to the plaintiff at Ronceverte in care of the defendant. The letter is dated December 5, 1953, and except for the omission of a portion of the postscript relating to the attorney's fee, the letter is as follows:

"Dear Mr. Gardner:

"As I explained to you over phone yesterday, we have three circuit judges who hear divorce cases, and all uncontested divorce cases are tried on Saturday mornings. These three judges alternate, each taking turns of two weeks or Saturdays each. Today, the 5th, and next Saturday, December 12th., the Judge hearing these uncontested divorce cases is very technical, and often takes over the questioning after the attorneys have finished, and he very often refuses to grant divorces. It depends somewhat on the mood he is in.

"We have two young Judges who leave all questioning up to the attorneys, and are not always trying to find some reason to refuse the divorce. According to the present schedule, one of these two younger Judges will hear the divorce cases on Saturday, December 19th., and that is the day I suggest that you come here for the hearing of your case.

"If possible, you should be at my office as soon as you can on Saturday morning, December 19th., and it will take only a few minutes to get the case over with, provided we are among the first to get to the court house. The court house closes at noon on every Saturday, and for that reason we should be there pretty early. Court opens at 9 o'clock.

"The reason I was holding up answer to your recent letter was in order to determine, if possible, who would hear your case. I will look for you December 19th.

"Yours very truly,

"S/ B. C. FRASSRAND

"P. S. You must have one witness to corroborate your testimony. * * *"

The plaintiff testified further that on Friday, December 18, 1953, accompanied by Wheeler Weikle, who testified as a witness in the divorce proceedings, he went to Chattanooga, where the two men spent the night. On the fol-

lowing morning, plaintiff went to the office of B. C. Frassrand. Plaintiff testified as follows concerning his conversation with the attorney on that occasion:

"Q. How long, Mr. Gardner, did you have a conference with this attorney, Mr. Frassrand, on the morning of December 19, at his office?

"A. I would say about fifteen (15) minutes, it might have been more or less.

"Q. It was very brief?

"A. Yes, sir.

"Q. Was Mr. Weikle with you at that time?

"A. Yes, he was.

"Q. At the time of your conference with Mr. Frassrand, did the question of your residence come up in the discussion?

"A. Yes, sir.

"Q. And what advice, if any, did Mr. Frassrand give you in that regard?

"A. He said that I should suggest some place in Tennessee for my residence. He said I had to be a resident for two (2) years and I told him that I had never been there and he said that he would take care of that. He said I should suggest some place and I told him that I didn't know of any place down there and he wrote in some place and I don't know where it is.

"Q. What did he advise you as to your being a resident of Tennessee for two (2) years.

"A. He said it wasn't actually necessary to be a resident for two (2) years. He said he would take care of that, that they did it that way down there and they didn't require that you be a resident for two (2) years."

A copy of the petition for a divorce filed by the plaintiff in the Circuit Court of Hamilton County, Tennessee, was identified by the plaintiff, and made a part of the record of the testimony in the annulment suit in the circuit court. In that petition, duly verified, the plaintiff al-

leged: "* * * he is a bona fide citizen and resident of Hamilton County, Tennessee, where he has resided for more than two whole years next preceding the filing of this petition for divorce." The petition for divorce further alleged "that the defendant is a non-resident of the State of Tennessee, and that the ordinary process cannot be served upon her, and that defendant can only be brought into court by means of publication as required by law in cases of non-residents."

Notwithstanding the allegations under oath of the petition for divorce in Tennessee, the plaintiff testified that he was never at any time a resident of Tennessee, and that he was in the State of Tennessee only from the evening of December 18, 1953, until after the divorce was granted on the following morning. Plaintiff testified that the proceedings before the court on that morning were extremely brief, but that following such brief proceedings he was granted the divorce which is now in question. Thereafter the plaintiff and his witness returned immediately to Greenbrier County.

On March 20, 1954, the plaintiff and defendant were married to each other at Bristol, Tennessee. Following this marrige, they lived together as man and wife at the defendant's home in Ronceverte in Greenbrier County until on or about August 14, 1954. Plaintiff testified that he separated from the defendant on or about that date because he had been advised by one or more attorneys that his Tennessee divorce would not be recognized by the courts of this State, and therefore that the validity of his subsequent marriage to the defendant was questionable.

The plaintiff further testified that he was married to Grace Showalter Gardner at the time of the granting of the divorce in Tennessee; that eight children were born of that marriage; and that "the law requires" him to pay to her the sum of $80.00 a month.

A male child was born to the defendant at Lewisburg, in Greenbrier County, on January 2, 1955.

By the final decree entered on August 15, 1956, the Circuit Court of Greenbrier County adjudged that "the marriage heretofore entered into between the said Elmer Miller Gardner and Minnie Lilly Gardner in the City of Bristol, State of Tennessee, on the 20th day of March, 1954, be and the same is hereby, annulled and declared to be null and void and of no legal effect or binding on either of the parties thereto." The court further adjudged and decreed that plaintiff was the father of the child born to the defendant on January 2, 1955, custody of the child was awarded to the defendant, and the plaintiff was required to pay to her for the support of the child the sum of $35 a month.

While some question was raised relative to the paternity of the child in the proceedings in the circuit court, the plaintiff makes no assignment of cross-error relative thereto, and the question has not been adverted to in the oral arguments or briefs in this Court. This apparently evinces an intention on the part of the plaintiff to waive or abandon any question relating to such paternity. *Elswick* v. *Charleston Transit Co.,* 128 W. Va. 241, 36 S. E. 2d 419; *Ferguson* v. *Pinson,* 131 W. Va. 691, 50 S. E. 2d 476, 478; Code, 1931, 56-6-37. In any event, there is in such a situation a strong presumption of legitimacy. *State* v. *Reed,* 107 W. Va. 563, 149 S. E. 669. "On grounds of public policy, neither husband nor wife, living together as such when a child is conceived, is competent to testify that a child born to them within the period of gestation following such conception is illegitimate." *Ohlinger* v. *Roush,* 119 W. Va. 272, pt. 1 syl., 193 S. E. 328. "The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate." Code, 1931, 42-1-7. The trial court having made this determination of fact under these circumstances, we perceive no error in this connection.

In her petition for an appeal filed in this Court, the defendant asserts three grounds of error as follows: (1) The circuit court lacked jurisdiction to the extent that the marriage, the annulment of which was decreed,

was not performed within this State, and it is asserted in this connection that the proof fails to disclose that either party was a resident of this State at the time the annulment suit was instituted; (2) the circuit court erred in failing to hold that plaintiff is precluded by estoppel and by the "clean hands" doctrine from obtaining the relief sought by him in the annulment suit; and (3) the court erred in decreeing that the Tennessee divorce was not binding upon the courts of this State, and in further decreeing that the marriage of the parties is void. No assignments of cross-error are made by the plaintiff. The written brief of his counsel deals only with the errors assigned by the defendant in her petition for an appeal.

Counsel for the defendant relies upon the common law fiction that the domicile of the wife follows that of the husband. In that connection it is asserted that the husband, since his separation from the defendant in Greenbrier County and prior to the institution of the annulment suit, again established residence in Virginia; that, in accordance with the common law fiction, the wife must be regarded as a resident of Virginia and, therefore, that the Circuit Court of Greenbrier County lacked jurisdiction in the annulment suit.

The first paragraph of the amended bill of complaint in the annulment suit alleges that both parties were residents of Greenbrier County at the time such suit was instituted. The answer of the defendant to the amended bill of complaint specifically admits that the husband's allegations in this respect are true and correct. "A direct, specific admission of a fact in a pleading is binding and conclusive on the party making it." *Clark* v. *Clark*, 70 W. Va. 428, syl. 4, 74 S. E. 234. See also *Cobb* v. *Mortgage Security Corp. of America*, 115 W. Va. 83, 174 S. E. 697; *Pettry* v. *Hedrick*, 123 W. Va. 107, 13 S. E. 2d 401; *Calhoun County Bank* v. *Ellison*, 133 W. Va. 9, 54 S. E. 2d 182. "Parties will not be permitted to assume successive inconsistent positions in the course of a suit or series of suits in reference to the same fact or state of facts." *MacDonald* v. *Long*, 100 W. Va. 551, syl., 131

S. E. 252. See also *Hartman* v. *Hartman,* 132 W. Va. 728, 53 S. E. 2d 407.

We do not mean to imply that the parties to a suit may, by false, fraudulent or collusive allegations, confer upon a circuit court a jurisdiction which it would not otherwise have. The testimony discloses that the defendant had been a resident of Greenbrier County for a period of years prior to the time of the institution of the annulment suit, and that prior to that time she had been a resident of Monroe County. These allegations of fact, fully supported by proof, may not be overridden by the vanishing common law fiction which has, in this case, no basis of allegation or proof for its support.

Suits for divorce and for annulment of marriages are treated in Chapter 48, Article 2 of the Code. Section 7 is, in part, as follows: "No suit to annul or affirm a marriage shall be maintainable unless at the commencement of the suit one of the parties is a bona fide resident of this State * * *." Section 8, which deals with the question of residence for the purpose of maintaining a divorce suit in this State, likewise employs the words "bona fide resident." Residence, under the divorce statutes, is held to be the equivalent of domicile. *Boos* v. *Boos,* 93 W. Va. 727, 117 S. E. 616; *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608. In suits for annulment of marriages, residence is generally held to be the equivalent of domicile. 55 C. J. S., Marriage, Section 52, page 930; 35 Am. Jur., Marriage, Section 61, page 222; 128 A.L.R. 69. If a husband and wife are living separate and apart, particularly where the husband has abandoned the wife, she may acquire a domicile separate from that of her husband. *Carty* v. *Carty,* 70 W. Va. 146, 73 S. E. 310; *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *Commonwealth* v. *Rutherfoord,* 160 Va. 524, 169 S. E. 909; *Williamson* v. *Osenton,* 232 U. S. 619, 34 S. Ct. 442, 58 L. ed. 758; Nelson, Divorce and Annulment (2d Ed.), Vol. 2, page 656; 28 C.J.S., Domicile, Section 12; 17 Am.

Jur., Divorce and Separation, Section 292, page 466; 4 M. J. Conflict of Laws, Domicile and Residence, Section 11, pages 45-46; 31 W. Va. L. Q. 65. Indeed, Code, 48-2-7, seems to imply that a wife may acquire a domicile separate from that of her husband to the extent that it provides that the suit may be maintained if "one of the parties" is a bona fide resident of this State. For the reasons stated, the Court holds that the circuit court had jurisdiction of the parties and of the subject matter in the annulment suit.

Under the provisions of the United States Constitution, Article IV, Section 1, the courts of this State are not required to accord full faith and credit to a judgment or decree of a court of another state, if such judgment or decree was procured by fraud, or if the court by which it was rendered lacked jurisdiction of the person or the subject matter. A judgment or decree rendered by a court of a sister state under such circumstances may be attacked collaterally in the courts of this State. *Consumer Credit Co.* v. *Bowers,* 143 W. Va. 748, 104 S. E. 2d 869; *Paull* v. *Cook,* 135 W. Va. 833, 65 S. E. 2d 750; *Perkins* v. *Hall,* 123 W. Va. 707, 17 S. E. 2d 795; *Grinrod Process Corporation* v. *Rothwell,* 117 W. Va. 709, 189 S. E. 100; *International Harvester Co.* v. *Solazo,* 116 W. Va. 34, 178 S. E. 429; *Citizens National Bank* v. *Consolidated Glass Co.,* 83 W. Va. 1, 97 S. E. 689; *Roller* v. *Murray,* 71 W. Va. 161, 76 S. E. 172; *Stewart* v. *Northern Assurance Co.,* 45 W. Va. 734, 32 S. E. 218; *Crumlish's Adm'r* v. *Cent. Imp. Co.,* 38 W. Va. 390, 18 S. E. 456; *Stewart* v. *Stewart,* 27 W. Va. 167; *Gilchrist* v. *O. & O. L. Co.,* 21 W. Va. 115. The same principles have been applied by this Court to divorce decrees rendered by courts of sister states. *Morris* v. *Morris,* 113 W. Va. 800, 169 S. E. 475; *Woodford* v. *Woodford,* 111 W. Va. 116, 161 S. E. 3; *State* v. *Goudy,* 94 W. Va. 542, 119 S. E. 685; *Caswell* v. *Caswell,* 84 W. Va. 575, 100 S. E. 482; *Campbell* v. *Switzer,* 74 W. Va. 509, 82 S. E. 319.

Courts of this State are authorized to take judicial notice of the laws of another state. Code, 57-1-4. At

the time of the institution of the divorce suit, the laws of the State of Tennessee required a prior residence of two years as a prerequisite to the right to maintain such suit. Williams Code of Tennessee (1934), Section 8428.

It is clearly established by both the pleadings and the proof in the annulment suit that neither party to the divorce suit was domiciled in the State of Tennessee at the time the divorce suit was instituted in that state. On the contrary, the pleadings and proof clearly establish that the husband was at that time domiciled in and a resident of the State of West Virginia, and that Grace Showalter Gardner was a resident of the State of Virginia. "No valid divorce from the bond of matrimony can be decreed, on constructive service, by the courts of a state in which neither party is domiciled; and the recital in the proceedings of the facts necessary to show jurisdiction may be contradicted." *Ward* v. *Ward*, 115 W. Va. 429, syl., 176 S. E. 708. See also *Williams* v. *North Carolina*, 325 U. S. 226, 65 S. Ct. 1092, 89 L. ed. 1577, 157 A.L.R. 1366 (Annotation page 1399); 143 A.L.R. 1296; 28 A.L.R. 2d 1306; 27B C.J.S., Divorce, Section 356, page 835. Since neither party was domiciled in the State of Tennessee at the time of the institution of the suit for divorce, the Circuit Court of Greenbrier County properly held that the Circuit Court of Hamilton County, Tennessee, acquired no jurisdiction.

It is urged on behalf of the defendant that the plaintiff on the basis of estoppel, and on the basis of the "clean hands" doctrine, should not be permitted to assert in this suit the invalidity of the divorce procured at his instance in the State of Tennessee.

Code, 48-2-1, provides that "all marriages which are prohibited by law on account of either of the parties having a former wife or husband then living * * * shall be void from the time they are so declared by a decree of nullity." The Revisers' Note following the statute, made in connection with the 1931 revision thereof, states: "Marriages contrary to the policy of this State, whether

solemnized in or outside of it, * * * should not be allowed to stand, provided this State has jurisdiction of the parties, or at least one of them, or of the marriage status."

Code, 48-2-2, dealing with suits to affirm or annul marriages, provides, in part, that *"either party* may, except as provided in the next succeeding section, institute a suit for annulling or affirming the same * * *." (Italics supplied). "The next succeeding section", Code, 48-2-3, provides that under certain circumstances a party to a marriage may not institute a suit to annul it. Generally speaking, it sets out instances in which a party at fault, or a party who by conduct has affirmed a marriage, may not institute a suit to annul such marriage. But it is significant that the statute omits to prohibit either party to a bigamous marriage from instituting a suit to annul it. The Revisers' Note points out the reason for this significant omission as follows: "This new section announces only the well-known principles that the party to a wrong may not invoke the aid of a court to right the wrong, and that a party who has acquiesced in a situation, or confirmed a state of facts, may not ask for relief therefrom. *Care is taken not to prevent the bringing of suits to annul marriages, by even the parties in the wrong, in the several cases involving public policy and morals, as for instance, the existence of a former wife or husband* * * *." (Italics supplied).

From the statutes and the Revisers' Notes quoted above, there is disclosed a legislative intent that neither party to a bigamous marriage should be precluded, either by estoppel or by the "clean hands" doctrine from instituting a suit to annul such marriage, at least where the purpose of the annulment suit relates only to the marriage status, as distinguished from private rights in property, for instance.

The case of *Martin* v. *Martin,* 54 W. Va. 301, 46 S. E. 120, involved a suit for annulment brought by a husband against the wife on the ground that they, being related

by blood as nephew and aunt, and being prohibited by reason of such blood relationship from marrying each other under the laws of West Virginia, went to Pennsylvania, there married each other, and later returned to this State to live. The parties had been married eighteen years and had a son ten years of age at the time the annulment suit was instituted. The trial chancellor held "that the plaintiff is not entitled to be heard in a court of chancery, and therefore the relief prayed for in his bill is denied him." In the third point of the syllabus, this Court, in reversing the judgment of the trial court, held: "The continuance of such marriage is contrary to good morals and public policy." In the body of the opinion the Court stated:

"If the parties could continue the marriage relationship without violating the criminal laws of the State, then the court might be justified in refusing to entertain the plaintiff's bill. But when the law forbids the continuance of their marriage relation, notwithstanding its inception may have been a misdemeanor, it is the duty of both parties to make restitution by having the marriage anulled promptly. Their hands may be unclean, but it is the duty of a court of equity to permit them to clean them when it can do so, and not permit such uncleanness to continue as a stench in the nostrils of the people. 19 Am. & En. En. Law (2 Ed.) 1212; *Com.* v. *Lane,* 113 Mass. 458; 18 Am. Rep. 509; *State* v. *Brown,* 47 Ohio St. 102; 21 Am. St. Rep. 790; 16 Am. & En. En. Law (2 Ed.) 134. While the rule is that equity will not entertain persons with unclean hands, yet there are just exceptions thereto, and the statutes of this State on marriage and divorce have mercifully provided that those who unwittingly enter into marriage that leads to the continual violation of law, notwithstanding their original sin, may have such relation annulled, so that they may go and sin no more. Such transgressors should get from before the public gaze as quickly as possible. * * *."

In the case of *Heflinger* v. *Heflinger,* 136 Va. 289, 118 S. E. 316, 318, 32 A.L.R. 1088, a husband was granted

a divorce in Norfolk, Virginia. A statute of that state prohibited either party from remarrying within six months after the date of the divorce decree. Within that period of time the husband and another woman, both residents of Virginia, went to Baltimore, Maryland, where they were married to each other. They returned immediately to Virginia to reside. The husband later brought this suit to annul the marriage on the ground that it was in contravention of the laws of Virginia and void. It was urged that relief should be denied to him on the basis of the "clean hands" doctrine. The Court held that "the equitable doctrine of 'clean hands' is subservient to the public policy of the state and cannot be invoked in contravention thereof." The Court further stated: "If the complainant were acquiring any rights by virtue of his suit, other than the determination of his status in society, a different rule might apply; but he is acquiring none. *McMullen* v. *Hoffman,* 174 U. S. 639, 19 Sup. Ct. Rep. 839, 43 L. ed. 1117."

In the case of *Waller* v. *Eanes' Admr.* 156 Va. 389, 157 S. E. 721, at page 725, it is stated: "It very clearly appears in Virginia that the equitable maxim that he who comes into equity must come with clean hands is subservient to the public policy of the state and cannot be invoked in contravention thereof." In 19 Am. Jur., Equity, Section 469, page 324, it is stated: "The maxim may not be invoked if the consequence of its application would be to produce a result which is denounced by statute or which is contrary to public policy." See also 30 C.J.S., Equity, Section 98, page 490; 27B C.J.S., Divorce, Section 364, page 852.

While there is a division of authority on the question of the application of the doctrine of estoppel and the "clean hands" doctrine in situations such as that now under consideration, it is quite generally held that such doctrine will not be applied to deny relief when the purpose of the annulment suit relates only to the marriage status, as distinguished from pecuniary or property rights. Annotations dealing with this distinction are

found in: 175 A.L.R. 539; 153 A.L.R. 941; 140 A.L.R. 915; 122 A.L.R 1323; and 109 AL.R. 1019.

The Court holds that the plaintiff was not precluded by estoppel or the "clean hands" doctrine from maintaining the annulment suit.

For the reasons stated, the judgment of the Circuit Court of Greenbrier County is affirmed.

*Affirmed.*